**STAR FRUITS S.N.C. and Institute of Experimental Botany, Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. CIV.A. 03–463–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 27, 2003.

---

---

Gregory S. Lewis, Morgan Lewis & Bockius LLP, McLean, VA, for Plaintiffs.

Dennis E. Szybala, AUSA, United States Attorney's Office, Alexandria, VA, for Defendant.

*MEMORANDUM OPINION*

BRINKEMA, District Judge.

### I. *Introduction*

Before the Court are the parties' cross-motions for summary judgment in this action for a declaratory judgment. For the reasons that follow, defendants' motion will be granted.

### II. *Background*

On April 21, 2000, Star Fruits S.N.C. filed patent application # 09/557,043 (" '043 Application") for Moncav cv—a purported new variety of peach tree.[1] On February 28, 2001, the United States Patent and Trademark Office ("PTO") issued a "non-final" Office Action, which included a Requirement for Information Under 37 C.F.R. § 1.105. Specifically, to determine whether existing publications served as a statutory bar to patentability pursuant to 35 U.S.C. § 102(b),[2] the PTO requested that Star Fruits provide

1. "any information available regarding the sale or other public distribution of the claimed plant variety anywhere in the world, including the date(s) of any sale or other public distribution;" and

---

1. This litigation was initially filed in the Western District of Washington as two civil actions that were consolidated. Plaintiff, Star Fruits S.N.C., is a French corporation. Plaintiff, Institute of Experimental Botany, is a Czech corporation. We will refer to the plaintiff as Star Fruits.

2. "A person shall be entitled to a patent unless... the invention was patented or described in a printed publication in this or a foreign country or in public use or sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). A § 102(b) bar "requires a determination of whether one skilled in the art to which the invention pertains could take the description of the invention in the printed publication and combine it with his own knowledge... and... be put in possession of the invention on which the patent is sought." *In re Sasse,* 629 F.2d 675, 681 (Cust. & Pat.App.1980); *see also In re LeGrice,* 49 C.C.P.A. 1124, 301 F.2d 929, 936 (Cust. & Pat.App.1962) (requiring that a § 102(b) publication "be such that a skilled artisan could take its teachings in combination with his own knowledge and be in possession of the invention"). This analysis "requires that the facts of each case be carefully considered to determine whether the description in the printed publication in question does in fact place the invention in possession of the public." *LeGrice,* 301 F.2d at 939.

2. "[C]opies of the application, published proposed denomination and published Breeder's Right grant."

(Feb. 28, 2001 PTO Office Action at 10–11, 14). Star Fruits was instructed to reply within three months, and was advised that a failure to reply within the set time period would cause the application to be abandoned pursuant to 35 U.S.C. § 133. (*Id.* at 1). Star Fruits declined to produce the requested information contending that it was "not material to patentability of the new variety." (June 28, 2001 Response to Request for Information Under 37 C.F.R. § 1.105). In support of its refusal to produce the requested information, Star Fruits submitted a lengthy brief articulating the legal basis for its position, which it claims amounted to a complete response to the § 1.105 requirement.[3] On September 25, 2001, the PTO issued a Notice of Abandonment with the following explanation:

"The reply filed on June 28, 2001 was not fully responsive to the prior Office Action... Applicant has declined to respond to information regarding the sale or other public distribution of the claimed plant anywhere in the world, including the date(s) of any sale or other public distribution. This was a deliberate omission, not a bona fide attempt at a complete response."

Pursuant to 37 C.F.R. § 1.181, on November 29, 2001, Star Fruits submitted a Petition to the Commissioner in which it argued that the examiner did not offer any reasons for her finding that Star Fruits'

June 28, 2001 Response was incomplete. Star Fruits requested that the examiner be directed to accept the June 28, 2001 Response as complete and proceed with the application on the merits. On March 22, 2002, the Commissioner issued his Decision denying Star Fruits' § 1.181 Petition explaining that the requested information was "reasonably necessary" to the examiner's determination of patentability under 35 U.S.C. § 102(b).[4] The Commissioner afforded Star Fruits three months within which to provide the required information, and advised Star Fruits that any request for reconsideration was to be filed within two months. Rather than provide the required information within the prescribed time period, and without requesting an extension of time, on July 22, 2002, Star Fruits submitted an untimely Request for Reconsideration. The Request for Reconsideration was denied on December 9, 2002 and Star Fruits' '043 Application was deemed abandoned as of that date.

Star Fruits now seeks relief in this court claiming that the PTO "abused its discretion when it issued its § 1.105 request demanding information that was not material to the [the] examination of the '043 application," and, thereafter, improperly deemed the '043 application abandoned when Star Fruits failed to provide the required information.[5] In particular, Star Fruits contends that the requested information was not material because, (1) under *Gandy v. Main Belting Co.*, 143 U.S. 587, 12 S.Ct. 598, 36 L.Ed. 272 (1892), only the public use or sale of an invention in the

---

3. As it contends before this Court, Star Fruits argued to the PTO that the examiner was improperly using § 1.105 to "set up an improper rejection under 35 U.S.C. § 102(b)" because the combination of a non-enabling printed publication and evidence of foreign public use or sales cannot, as a matter of law, bar patentability under 35 U.S.C. § 102(b). (June 28, 2001 Amendment and Response to Office Action at 15).

4. Specifically, the Commissioner explained that public availability of the plant, itself, may convert the plant breeders' rights certificate from a non-enabling to an enabling publication.

5. Specifically, Star Fruits seeks a declaration that (1) the PTO improperly demanded information about foreign use or sales of the plant variety and foreign printed publications, and that the PTO improperly abandoned Star

United States will bar patentability; (2) in accordance with *Imazio Nursery, Inc. v. Dania Greenhouses,* 69 F.3d 1560 (Fed. Cir.1995), a written description of a plant variety, alone, cannot be enabling as a matter of law;[6] and (3) the PTO may not couple evidence of foreign use or sales with non-enabling printed publications to reject a patent application under § 102(b).[7]

Defendants argue that Star Fruits' unilateral determination that the requested information was not material to the patentability determination, and attendant refusal to disclose the information, are based on an erroneous understanding of an examiner's authority under 37 C.F.R. § 1.105. They also contend that, by pursuing this civil action, Star Fruits improperly seeks to obtain an advisory opinion regarding the materiality of the required information "to prevent a possible rejection over certain prior art." (Defendants' Memorandum at 14). In response to Star Fruits'

specific claims, the defendants concede that the breeders' rights publications, alone, cannot be enabling references under § 102(b), (March 22, 2002 Petition Decision at 2), and further agree that evidence of prior foreign use or sales, by itself, cannot vitiate a patent claim, (Defendant's Memorandum at 26); but contend that "once the plant has been provided to others by sales or other means, a description of the invention in a printed publication may be enabling because the combination of publication with sales can place the invention in the public's possession." [8] (Defendant's Memorandum at 18).

### III. *Discussion*

#### A. *The PTO Exclusively Determines What Information May Be "Reasonably Necessary" to Patentability Determination*

■ Beyond that which a patent applicant is duty-bound to disclose pursuant to

---

Fruits' '043 application; and (2) the PTO improperly construes the requirements of 35 U.S.C. § 102(b) to permit a rejection of an application for a plant patent by coupling a Plant Breeders' Rights certificate with the sale of living plant material in a foreign country. Plaintiff also seeks a writ of mandamus ordering the USPTO to reinstate the '043 application, withdraw the § 1.105 requirement and continue prosecution of the '043 application on its merits, and a writ of mandamus ordering the PTO to discontinue rejecting applications for plant patents under 35 U.S.C. 102(b) by coupling evidence of non-enabling foreign use or sales with non-enabling printed publications. (Complaint for Declaratory Judgment and Writ of Mandamus at 1–2).

6. In *Imazio,* the court concluded that, in the infringement context, "the patentee must prove that the alleged infringing plant is an asexual reproduction [or] progeny of the patented plant." 69 F.3d at 1569.

7. Relying predominantly on *Imazio,* 69 F.3d at 1569, Star Fruits argues that the examiner's § 1.105 requirement was not "reasonably necessary" because, as a matter of law, non-

enabling publications such as the requested breeders' rights application and certificate cannot become enabling when/if combined with evidence of foreign use or sales of the plant variety.

8. In conducting her initial research, the examiner found evidence that Star Fruits had been issued breeders' rights certificates for the peach tree at issue several years before filing its '043 application in the United States. The examiner considered the possibility that, since breeders' rights certificates are published, the peach tree may have been available to the public more than one year before the patent application was filed—barring patentability under 35 U.S.C. § 102(b). Defendants argue that *Ex Parte Thomson,* 24 U.S.P.Q.2d (BNA) 1618, *7, 1992 WL 336793 (1992) (affirming a § 102(b) rejection of an application based, in part, on published descriptions of the cotton plant at issue in conjunction with the availability of the plant's seeds anywhere in the world), permits the PTO examiner to consider the public availability of the peach variety anywhere in the world in conjunction with published descriptions of the plant when evaluating the patent application.

37 C.F.R. § 1.56, an examiner may require the production of "such information as may be reasonably necessary to properly examine or treat the matter."[9]  37 C.F.R. § 1.105. The examiner, not the applicant, determines what information is necessary to the patentability determination.  However, in accordance with 37 C.F.R. § 1.181, an applicant may petition the Commissioner concerning any action or requirement of any examiner not subject to appeal to the Board of Patent Appeals and Interferences.  An examiner's Requirement for Information is an example of a requirement that may be the subject of such a petition. The petition must be filed within two months of the action about which an applicant complains.  37 C.F.R. § 1.181(f).[10]

Regardless of whether it would have been dispositive of a § 102(b) patentability determination, the Commissioner agreed with the examiner that the breeders' rights materials and information concerning foreign use or sales of the same peach tree variety for which Star Fruits seeks a U.S. patent was the type of information "a reasonable examiner would consider." *Bristol–Myers Squibb Co.,* 326 F.3d at 1234.  (March 22, 2002 Petition Decision at 2).  Because the § 1.181 petition process serves as the exclusive administrative check on the discretion of individual patent examiners before a determination has been made on the merits of an application, once

the Commissioner issued his March 22, 2002 Decision, Star Fruits had no choice but to comply with the § 1.105 requirement.  By asking this Court to intervene at this stage of the patent application process, plaintiff essentially would have the court second-guess the reasoned judgment of both the patent examiner and Commissioner regarding what information may be necessary to the patentability determination.  For a court to become involved at this stage of the application process would be equivalent to rendering an advisory opinion regarding whether the required information, if produced, could support a § 102(b) bar to patentability.  This result would, in our opinion, turn a federal court into a super patent examiner, a role far beyond its proper judicial authority.

B.  *Star Fruits' Application was Properly Abandoned Because it Failed to Submit a Complete Response to the Examiner's Requirement for Information*

■  "A complete reply to a § 1.105 requirement is a reply to each enumerated requirement for information giving either the information required or a statement that the information required. . . is unknown and/or not readily available."  *See* Manual of Patent Examining Procedure at § 704.12(b).  If an applicant fails to prosecute or otherwise abandons its claim within

---

**9.**  Information may be relevant if "a reasonable examiner would be substantially likely to consider [it] important in deciding whether to allow an application to issue as a patent." *Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.,* 326 F.3d 1226, 1234 (Fed.Cir. 2003) (quoting *GFI, Inc. v. Franklin Corp.,* 265 F.3d 1268 (Fed.Cir.2001)).  Material information is not limited to that which "would conclusively decide the issue of patentability." *Li Second Family Ltd. P'ship. v. Toshiba Corp.,* 231 F.3d 1373, 1380–81 (Fed.Cir.2000).

**10.**  Star Fruits neither replied to the February 28, 2001 Office Action within three months, nor filed its § 1.181 petition within two months of the examiner's § 1.105 requirement.  Instead, on June 28, 2001, four months later, Star Fruits submitted its Response.  Because the examiner found Star Fruits' Response to be incomplete, on September 25, 2001, she deemed the '043 application abandoned.  It is from the abandonment that Star Fruits petitioned the Commissioner pursuant to § 1.181.  Star Fruits did not file its petition until November 29, 2001.

the time period fixed by the Commissioner in an Office Action, the application shall be regarded as abandoned. 35 U.S.C. § 133; 37 C.F.R. § 1.135. Failure to file a timely reply to an Office Action constitutes abandonment. 37 C.F.R. § 1.135. Neither the filing of a § 1.181 petition nor a request for reconsideration stays the period within which an applicant must reply to an Office Action. 37 C.F.R. § 1.181(f).

According to the instructions included in the Commissioner's Petition Decision of March 22, 2002, Star Fruits was to produce the required information within three months, and file any request for reconsideration within two months. Star Fruits did neither. Star Fruits did not request an extension of time within which to produce the required information pursuant to 37 C.F.R. § 1.136; and did not file its Request for Reconsideration until July 22, 2002—four months after the issuance of the Commissioner's Petition Decision. If Star Fruits had timely provided the requested information, and its application had been rejected pursuant to § 102(b), Star Fruits could have exercised its appellate rights under 35 U.S.C. §§ 134, 141 or 145. Because Star Fruits neither provided the required information nor indicated that the information was unknown and/or not readily available, the PTO properly deemed the '043 application abandoned. 37 C.F.R. § 1.135.

III. *Conclusion*

For the foregoing reasons and any additional reasons stated in open court on June 20, 2003, we find that Star Fruits seeks improper, premature judicial intervention in the traditional patent application process. Accordingly, Plaintiff's Motion for Summary Judgment will be denied, and Defendants' Motion for Summary Judgment will be granted by an appropriate

order issued with this Memorandum Opinion.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, Plaintiff Star Fruits' Motion for Summary Judgment is DENIED, and Defendants' Motion for Summary Judgment is GRANTED; and it is hereby

ORDERED that judgment be and is entered in favor of defendants pursuant to Fed.R.Civ.P. 58.

The Clerk is directed to forward copies of this Order to counsel of record.