# United States Court of Appeals for the Federal Circuit

04-1160

STAR FRUITS S.N.C. and
INSTITUTE OF EXPERIMENTAL BOTANY,

Plaintiffs-Appellants,

v.

UNITED STATES and DEPARTMENT OF COMMERCE,

Defendants-Appellees,

and

PATENT AND TRADEMARK OFFICE and
JON DUDAS, Director, Patent and Trademark Office
and Under Secretary of Commerce for Intellectual Property,

Defendants-Appellees.

Patrick H. Ballew, Stratton Ballew PLLC, of Yakima, Washington, argued for plaintiffs-appellants.

Stephen Walsh, Associate Solicitor, United States Patent and Trademark Office, argued for defendants-appellees. With him on the brief were John M. Whealan, Solicitor, and Linda Moncys Isacson, Associate Solicitor.

Appealed from:    United States District Court for the Eastern District of Virginia

Judge Leonie M. Brinkema

# United States Court of Appeals for the Federal Circuit

04-1160

STAR FRUITS S.N.C. and
INSTITUTE OF EXPERIMENTAL BOTANY,

Plaintiffs-Appellants,

v.

UNITED STATES and DEPARTMENT OF COMMERCE,

Defendants-Appellees,

and

PATENT AND TRADEMARK OFFICE and
JON DUDAS, Director, Patent and Trademark Office and
Under Secretary of Commerce for Intellectual Property,

Defendants-Appellees.

_____

DECIDED:  January 3, 2005

_____

Before NEWMAN, CLEVENGER and DYK, Circuit Judges.

Opinion for the court filed by Circuit Judge CLEVENGER.  Dissenting opinion filed by Circuit Judge NEWMAN.

CLEVENGER, Circuit Judge.

Star Fruits S.N.C. and Institute of Experimental Botany ("Star Fruits") appeal the decision of the United States District Court for the Eastern District of Virginia denying Star Fruits's motion for summary judgment and granting summary judgment in favor of the United States.  Star Fruits S.N.C. v. United States, 280 F. Supp. 2d 512 (E.D. Va. 2003).  Because the United States Patent and Trademark Office ("the Office") did not

act unlawfully when it deemed Star Fruits's patent application abandoned for failing to respond to a Requirement For Information under 37 C.F.R. § 1.105, we affirm the judgment of the district court.

I

The facts of this case are straightforward. Star Fruits filed U.S. Patent Application No. 09/557,043, directed to a variety of peach tree. A subsequent Office Action included a "Requirement For Information Under 37 C.F.R. 1.105." Specifically, the Office sought "any information available regarding the sale or other public distribution of the claimed plant variety anywhere in the world" and "copies of the application, published proposed denomination and published Breeder's Right grant." The Office further informed Star Fruits that to the extent Star Fruits did not have or could not readily obtain the required information, a statement to that effect would "be accepted as a complete response to the requirement for that item."

Star Fruits declined to provide the required information on the grounds that it was "not material to patentability of the new variety." The Response accompanying Star Fruits's refusal to provide the required information did not state that Star Fruits did not have or could not readily obtain the information. Instead, the Response made clear that Star Fruits anticipated a rejection of its application under 35 U.S.C. § 102 if it complied with the Office's requirement, that it viewed the prospective rejection based on the requested information as contrary to law, and that it refused to provide the information because it sought to prevent the Office from making the rejection.

The Office viewed Star Fruits's refusal to provide the required information as a "deliberate omission, not a bona fide attempt at a complete response," and issued a

Notice of Abandonment. Pursuant to 37 C.F.R. § 1.181, Star Fruits petitioned the Director to require the Examiner to accept Star Fruits's Response as complete. The Director denied the petition, stating:

> The threshold for requiring information from applicants under 37 CFR 1.105 is that the information required is reasonably necessary to treat a matter in an application. The matter may or may not be related to patentability. The matter here is a matter of patentability and the information required is necessary for the examiner to make a reasoned judgment under 35 U.S.C. 102(b) of patentability. Applicant's arguments have not shown, in rebuttal, that the information requested to be provided is unnecessary or unreasonable. In contrast, the examiner has shown by appropriate arguments that the information requested is necessary under ex parte Thomson, 24 USPQ2d, 1618.

(J.A. at 98.) The Director reset the time period for Star Fruits to respond to the Requirement For Information to three months. Star Fruits requested reconsideration. The request was granted, the request for relief from the Requirement For Information was again denied, and the application was deemed abandoned.

Star Fruits brought suit in the district court. It claimed that the Office abused its discretion when it denied Star Fruits's petition challenging the Requirement For Information because, as a matter of law according to Star Fruits, the information the Office sought could not be used to reject Star Fruits's application. The district court disagreed, concluding that "such information as may be reasonably necessary to properly examine or treat the matter," 37 C.F.R. § 1.105(a)(1), includes information that may not be directly used to reject an assertion of patentability. Star Fruits, 280 F. Supp. 2d at 515-16. It further held that a section 1.181 petition is "the exclusive administrative check on the discretion of individual patent examiners before a determination has been made on the merits of an application," and when the Director concluded that the requirement was proper, "Star Fruits had no choice but to comply." Id. at 516.

Accordingly, the district court held that by refusing to provide the required information, Star Fruits abandoned its application. Id. at 517.

## II

Star Fruits appeals. Because this claim, brought pursuant to the Administrative Procedure Act ("APA"), see 5 U.S.C. §§ 702-706 (2000), involves the Director's duties "[i]n the course of examining or treating a matter in [an application] . . . in a patent, or in a reexamination proceeding," 37 C.F.R. § 105(a)(1), it raises a substantial question under the patent laws, and, accordingly, we have jurisdiction under 28 U.S.C. § 1338(a) and 28 U.S.C. § 1295(a)(1) (2000). See Helfgott & Karas, P.C. v. Dickenson, 209 F.3d 1328, 1333-35 (Fed. Cir. 2000).

We review the district court's grant of summary judgment without deference, reapplying the same standard as the district court. See Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994). Under the APA, courts "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2); Arnold P'ship v. Dudas, 362 F.3d 1338, 1340 (Fed. Cir. 2004). An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors. 362 F.3d at 1340.

## III

Star Fruits's contention on appeal is that the Director abused his discretion when he required compliance with the Requirement For Information because it was based on an erroneous interpretation of law. In particular, Star Fruits contends that the language,

"such information as may be reasonably necessary to properly examine or treat the matter," from section 1.105 may not include "any information available regarding the sale or other public distribution of the claimed plant variety anywhere in the world" and "copies of the application, published proposed denomination and published Breeder's Right grant." This is so, according to Star Fruits, because the duty of candor embodied in 37 C.F.R. § 1.56, which requires applicants to disclose information material to patentability, controls section 1.105 requirements. The effect of this, again according to Star Fruits, is that an applicant need not comply with any section 1.105 requirement that seeks information that is not material to patentability. Here, Star Fruits extends this logic by equating the concept of "material to patentability" with information that directly supports a rejection. Moreover, Star Fruits asserts that the applicant, not the examiner, decides what information is material to patentability under section 1.56. Thus, in Star Fruits's view, the Office cannot require information unless the product of the requirement will result in a rejection and were the Office to require any other information, section 1.56 affords Star Fruits the power to refuse the requirement. We respond first, in detail, to Star Fruits's arguments.

A

i

Under 37 C.F.R. § 1.105 the Office can require information that does not directly support a rejection. An agency's interpretation of its own regulations is entitled to substantial deference and will be accepted unless it is plainly erroneous or inconsistent with the regulation. See Eli Lilly & Co. v. Bd. of Regents of the Univ. of Wa., 334 F.3d 1264, 1266 (Fed. Cir. 2003). Here, the Office considered information concerning any

sale or public distribution of the claimed invention and any information concerning Breeder's Rights applications or grants as within the authorized scope of a Requirement For Information under section 1.105.

This interpretation is not plainly erroneous or inconsistent with the regulation. Congress has delegated to the Office the rulemaking power to "establish regulations, not inconsistent with law, which—(A) shall govern the conduct of proceedings in the Office." 35 U.S.C. § 2(b)(2) (2000) (formerly at 35 U.S.C. § 6(a) (1988), see Merck & Co. v. Kessler, 80 F.3d 1543, 1549-50 (Fed. Cir. 1996)); Stevens v. Tamai, 366 F.3d 1325, 1333 (Fed. Cir. 2004). Section 1.105 stems from an initiative entitled Changes to Implement the Patent Business Goals. Through notice and comment rulemaking the Office made explicit the inherent authority of Office employees to require information from an applicant. The goal is to "encourage" employees to use that power to "perform the best quality examination possible." 65 Fed. Reg. 54,604, at 54,633 (September 8, 2000) (to be codified at 37 C.F.R. pts. 1, 3, 5, 10); see also 64 Fed. Reg. 53,772 (proposed October 4, 1999); 63 Fed. Reg. 53,498 (proposed October 5, 1998). The final rule permits that "the examiner or other Office employee may require the submission . . . of such information as may be reasonably necessary to properly examine or treat the matter." 37 C.F.R. 1.105(a)(1) (emphasis added).

We think it clear that "such information as may be reasonably necessary to properly examine or treat the matter," 37 C.F.R. 1.105(a)(1), contemplates information relevant to examination either procedurally or substantively. It includes a zone of information beyond that defined by section 1.56 as material to patentability, and beyond

that which is directly useful to support a rejection or conclusively decide the issue of patentability. Several observations militate in favor of this conclusion.

First, under the current regulations an applicant has an affirmative duty to disclose information material to patentability. See 37 C.F.R. § 1.56. Because an applicant already has a duty to disclose this information, it makes no sense for the Office to promulgate a rule empowering it to "require the submission" of information the applicant is required to submit in the first instance.

Second, section 1.105 identifies the required information as that information "reasonably necessary to properly examine or treat the matter" instead of that information "material to patentability." Under ordinary principles of interpretation, the choice of different language indicates a different intended meaning.

Third, the plain language of the regulation contemplates requirements for information that go beyond information required by section 1.56. For example, "any non-patent literature . . . by any of the inventors, that relates to the claimed invention[,]" 37 C.F.R. § 1.105(a)(1)(iii) (emphasis added), could include sales brochures, catalogues, or PBR applications or grants. "[A]ny use of the claimed invention known to any of the inventors at the time the application was filed notwithstanding the date of the use," id. § 1.105(a)(1)(vii) (emphasis added), could refer to uses that would not affect patentability at all. Likewise, information directed to whether a search was conducted and what was searched, id § 1.105(a)(1)(ii), is not necessarily required by section 1.56. Other requirements for information are also foreseeable under the "reasonably necessary to properly examine or treat the matter" standard. For instance, it might be reasonably necessary for the Office to require an explanation of technical material in a

04-1160                                    7

publication, such as one of the inventor's publications, or require the applicant's comments on a recent Federal Circuit opinion and how that opinion affects examination. See, e.g., 65 Fed. Reg. at 54,634. Although this information improves the quality and efficiency of examination it is not necessarily information that an applicant is required to provide under section 1.56.[1] In sum, we think that the Office's interpretation of 37 C.F.R. § 1.105 conforms to the plain language of the regulation.

ii

The duty of candor embodied in 37 C.F.R. § 1.56 does not give the applicant the power to refuse a Requirement For Information under section 1.105.[2] Neither regulation states that responses to Requirements For Information can be limited, at the applicant's discretion, to whatever the applicant believes it might have been affirmatively required to submit under section 1.56.

Moreover, we think the language, "Office . . . may require the submission . . . of . . . information", 37 C.F.R. § 1.105(a)(1), very expressly states that the Office, not the applicant, controls the scope of the requirement. Because the scope of information "reasonably necessary to properly examine or treat the matter" is broader than that information the applicant is duty-bound to provide under section 1.56, we are convinced

---

[1] The dissent also cites section 2001.05 of the Manual of Patent Examining Procedure, which states: "If the information is not material, there is no duty to disclose it to the Office." This is merely cumulative with Star Fruits's argument that section 1.56 limits section 1.105, since MPEP § 2001.05 is entitled "Materiality Under 37 C.F.R. 1.56(b)."

[2] Of course the duty of candor and the requirement that an applicant behave equitably in its transactions with the Office still applies to responses to Requirements For Information.

that the Office can require the applicant to submit such information when it is known or readily available.

B

Star Fruits's argument fails to come to grips with the real issue in this case, which is whether the Office can use section 1.105 to compel disclosure of information that the examiner deems pertinent to patentability when the applicant has a contrary view of the applicable law. We answer this question in the affirmative.

The Office is clearly entitled to use section 1.105 to seek information that may support a rejection. Just as the applicant produces information it deems pertinent to patentability under section 1.56, the examiner is free to request information under section 1.105 that the examiner deems pertinent to the issue of patentability. In this case, the dispute over whether Star Fruits should be compelled to answer the examiner's Requirement For Information under section 1.105 boils down to a disagreement between Star Fruits and the examiner as to the significance of the information sought to the ultimate question of whether Star Fruits's application discloses patentable subject matter.

The Director is charged with the duty of deciding whether a patent should issue from an application. To perform that duty, the law must be applied to the facts at hand in any application. That the person charged with enforcement of the law, here an examiner, may sometimes disagree with the applicant on the theory or scope of the law to be applied is hardly surprising. So long as the request from the examiner for information is not arbitrary or capricious, the applicant cannot impede the examiner's performance of his duty by refusing to comply with an information requirement which

proceeds from the examiner's view of the scope of the law to be applied to the application at hand. To allow such interference would have the effect of forcing the Office to make patentability determinations on insufficient facts and information. Such conduct inefficiently shifts the burden of obtaining information that the applicant is in the best position to most cheaply provide onto the shoulders of the Office and risks the systemic inefficiencies that attend the issue of invalid patents. Examination under such circumstances is neither fair and equitable to the public nor efficient.

IV

Star Fruits alternatively argues that the information sought is not relevant to the examination process and that the request was therefore improper. APA challenges in cases like this are not properly directed to prospective patentability determinations. A claim that the Office is abusing its discretion in seeking information from an applicant because the Office might (or will) use that information to enter a rejection is a preemptive challenge to the Office's patentability determination. Assuming the Office intended to enter a rejection under 35 U.S.C. § 102(b), the correctness vel non of that rejection is not properly challenged by Star Fruits withholding information from the Office. Instead, Star Fruits must await a rejection under section 102(b) and then litigate the propriety of that rejection before the proper forum for such a complaint, in the first instance, the Board of Patent Appeals and Interferences, not the district court. See 35 U.S.C. § 134(a) (2000). Preempting the Office's decision-making by refusing reasonable requirements for information is not a course calculated to achieve a timely and equitable determination of whether a patent should be granted.

In the matter at hand, the Examiner's Requirement For Information was not unreasonable and was within the scope of section 1.105. Accordingly, there is no abuse of discretion or arbitrary or capricious conduct in the Director's decision to refuse to grant Star Fruits's petition under 37 C.F.R. § 1.181 either initially or on reconsideration. Star Fruits abandoned its application.

As noted above, the district court viewed the section 1.181 petition process as the "exclusive administrative check" on the discretion of examiners to seek information from applicants under section 1.105. The district court feared finding itself in the position of a "super patent examiner" were it called upon to second-guess the actual examiner by deciding whether the required information could support a section 102(b) bar to patentability. 280 F. Supp. 2d at 516. To the extent the district court deemed itself powerless to review the final action of the Office deeming Star Fruits's application as abandoned, it erred.

Whether information sought by an examiner under section 1.105 could or would lead to a rejection of the application on its merits does not, for the reasons we have expressed, define the limits of the information that lawfully may be sought by an examiner. So long as there is some legitimate reason for seeking the information under section 1.105, the applicant has a duty to respond. If the examiner deems the information sought pertinent to the legal inquiry the examiner must conduct, the fact that the examiner's theory is incorrect is no ground on which the applicant may refuse to comply with a request for information. The Office is authorized under section 1.105 to require any information that is either relevant to patentability under any nonfrivilous legal theory, or is reasonably calculated to lead to such relevant information.

If the Director decides, on challenge under section 1.181, that a requirement for information is proper, the applicant may challenge that decision under the APA. The scope of APA review is not, as the district court feared, to test the examiner's theory of the case or the examiner's findings of fact. The district court, on APA review, does not enmesh itself in the decision-making process of the examiner. Its function, instead, is simply to guard against the possibility of arbitrary or capricious behavior by examiners in seeking information.

Given the review process, first by the examiner and then by the Director, each receiving argument from the applicant, we think it unlikely that many requirements for information will be unreasonable or beyond the scope of section 1.105. However, without mentioning specifics, we imagine that there may be cases where the Office might abuse its discretion or behave arbitrarily and capriciously in connection with a requirement for information. For that reason, this decision should not be read as affirming a holding that no APA claim is possible after the Director's action.

V

Because the Requirement For Information was within the scope of 37 C.F.R. § 1.105 and not unreasonable, the judgment of the district court is affirmed.

AFFIRMED

# United States Court of Appeals for the Federal Circuit

04-1160


STAR FRUITS S.N.C. and
INSTITUTE OF EXPERIMENTAL BOTANY,

Plaintiffs-Appellants,

v.

UNITED STATES and DEPARTMENT OF COMMERCE,

Defendants-Appellees,

and

PATENT AND TRADEMARK OFFICE and
JON DUDAS, Director, Patent and Trademark Office
and Under Secretary of Commerce for Intellectual Property,

Defendants-Appellees.


NEWMAN, Circuit Judge, dissenting.


I respectfully dissent. Star Fruits challenges the PTO's change in law and practice, whereby in 2001 the agency decided to hold that foreign sale or use of a plant that has foreign Breeder's Rights registration may bar United States patentability of that plant. The examiner informed Star Fruits that its United States application was subject to rejection on this ground. Star Fruits challenged that position by declining to provide the PTO with foreign sales and use information, whereupon the examiner refused to continue the examination and declared the application abandoned. Star Fruits filed a petition to the Director, the only available path of review of the examiner's action. The Director upheld the

PTO's view of the law. Star Fruits then appealed to the district court under the Administrative Procedure Act, arguing that the agency's action was an improper procedure and not in accordance with law.

The district court held that it could not review internal examination practices, and dismissed the appeal. My colleagues state that they do not agree with the ground of the district court's dismissal, but instead of remanding to the district court they have themselves decided the appeal, on grounds not distinguishable from that of the district court. Thus this court holds that the examination demand must be complied with, and does not mention the issue of law that underlies the dispute: the issue of whether foreign sales and use are relevant to patentability in the United States. Star Fruits extensively argued this issue in the PTO, and this is the issue that was presented to the district court, Star Fruits stating that the PTO's ruling is contrary to statute:

> 35 U.S.C. §102. A person shall be entitled to a patent unless --
>                          * * *
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, . . .

(Emphasis added.) Star Fruits cites Gandy v. Main Belting Co., 143 U.S. 587, 593 (1892) (foreign sales do not bar patentability) and In re LeGrice, 301 F.2d 929, 935 (CCPA 1962) ("if section 102(b) was to be given a different interpretation as to plant patents, it should have been expressly qualified by Congress so that descriptions of plants in printed publications would have been judged by different standards than those so long recognized by leading text writers and the courts"). Thus Star Fruits states that the PTO's decision is contrary to statute and precedent. Star Fruits also cited the PTO's regulation for examination, which states that:

04-1160                                    2

37 C.F.R. §1.105 Requirements for information.

(a)(1) . . . the examiner or other Office employee may require the submission . . . of <u>such information as may be reasonably necessary</u> to properly examine or treat the matter, . . .

(Emphasis added.) For materiality, in addition to 35 U.S.C. §102 Star Fruits cited the Manual of Patent Examination Procedure:

MPEP 2001.05 . . . If the information is not material, there is no duty to disclose it to the Office.

Star Fruits argues that the demanded information of foreign sales and distribution was not "reasonably necessary," for it was not "material" to patentability. The statute is not mentioned by the panel majority, who simply hold that information must be provided unless the demand is "arbitrary or capricious." The APA criterion of "contrary to law" is not mentioned.

Despite its broad power to grant or deny patents, the Patent and Trademark Office does not have the responsibility, or the authority, to depart from the law, or to make or change the policy embodied in the law, or to reinterpret the statute in a way that departs from congressional intention or judicial interpretation. Judicial review under the Administrative Procedure Act serves to test agency compliance with statute and precedent. An agency change of law, particularly a change that was not subjected to notice-and-comment rulemaking before its implementation, is not immune from APA review. My colleagues' rule that the patent applicant's only recourse is to comply with the request for information and undergo full examination to final rejection, with appeal available only through the PTO Board of Appeals, bypasses and forecloses APA procedures. When an agency unilaterally makes a major and far-reaching change in law, the entire administrative

04-1160                                               3

process need not be forced to proceed on the incorrect law, a process that may consume years, in order to challenge the change in law. I know of no reason for denying to the invention community the full scope of APA procedures, now that the Court has confirmed in Dickinson v. Zurko, 527 U.S. 150 (1999), that the APA applies to the Patent and Trademark Office. The question of law was decided by the PTO Director on Star Fruits' petition, and was properly taken to the district court for substantive review.

The new rule and examination practice adopted by the PTO is at least facially inconsistent with statute and precedent. It is a significant change in long-standing practice. This change was not subjected to notice-and-comment rulemaking, but simply to internal arrogation. In such a context, judicial review protects the rights affected by the agency action. See, e.g., American Power & Light Co. v. SEC, 329 U.S. 90, 105 (1946) ("Private rights are protected by access to the courts to test the application of the policy in the light of these legislative declarations."). The Administrative Procedure Act implements this obligation.

Adequate access to the courts, to test conspicuous changes in law and policy initiated by the agency, is fundamental to the administrative state. When a case of "first impression" arises, as is here acknowledged, the agency has a "duty to explain its departure from prior norms." Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Board of Trade, 412 U.S. 800, 808 (1973). The record does not show that the PTO met that duty. See 5 U.S.C. §553 (describing procedures to be followed in administrative rule-making). The judicial duty is both to review agency departures from substantive law, and to assure that appropriate procedures are followed. See Abbott Labs. v. Gardner, 387 U.S. 136, 154 (1967) ("Where the legal issue presented is fit for judicial resolution, and where a regulation

requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts under the Administrative Procedure Act and the Declaratory Judgment Act must be permitted, absent a statutory bar or some other unusual circumstance . . .").

Judicial review necessarily includes deciding whether the agency's theory of the law is correct. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413-14 (1971) ("In all cases agency action must be set aside if the action was . . . 'not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements"); see also FCC v. NextWave Pers. Communications, Inc., 537 U.S. 293, 300 (2003) ("The Administrative Procedure Act requires federal courts to set aside federal agency action that is 'not in accordance with law,' 5 U.S.C. §706(2)(A) -- which means, of course, any law, and not merely those laws that the agency itself is charged with administering."); Bowen v. Massachusetts, 487 U.S. 879, 911 (1988) ("It seems perfectly clear that, as 'the reviewing court,' the District Court had the authority to 'hold unlawful and set aside agency action' that it found to be 'not in accordance with law.'"). The panel majority dilutes this safeguard by holding that judicial review is available in this case only for PTO Board of Appeals decisions.

The question of law that underlies this appeal was recently before this court in a copending case, reported at In re Elsner, 381 F.3d 1125 (Fed. Cir. 2004) (rehearing *en banc* denied Nov. 23, 2004). Although that decision remanded the case to the PTO for further development, it accepted the principle that foreign sales and foreign knowledge may be relevant to patentability in the United States. That case, recognized all around as of "first impression," decided the issue of substantive law that underlies Star Fruits' petition.

04-1160                                    5

That should have mooted this appeal. Instead, the panel majority has expounded on various aspects of judicial review, unnecessarily and generally inaptly. For example, it is incorrect to hold that information can be demanded even if it cannot lead to a rejection on the merits. The PTO nowhere goes that far; the PTO makes clear its position that the foreign sales information can indeed lead to a rejection on the merits. That is why the district court erred in refusing to consider this question of law, and why this panel similarly errs. The court's validation of the PTO's right to demand "sales brochures" and other hypothetical information -- such as an applicant's comments on a Federal Circuit decision -- is irrelevant and impertinent.

Thus my colleagues err in limiting their review to whether the PTO action was "arbitrary or capricious," for the APA also requires review to determine whether the action is in "accordance with law." §706(2)(A). It is incorrect to hold that the applicant must yield to "the examiner's view of the scope of the law to be applied." Maj. op. at 9. That is a misperception of the criteria for judicial review under the APA. This is not examiner discretion; it is a major change of law, a change of economic importance and high controversy.

In the administrative state, vigilance is required to balance authority and responsibility among the branches of government. The pragmatism of delegation to administrative agencies of complex procedures, is balanced against the responsibility of the courts to assure compliance with law. See INS v. Chadha, 462 U.S. 919, 953 n.16 (1983) (while administrative agencies "implement, interpret, or prescribe law or policy," the courts "'ascertain whether the will of Congress has been obeyed,' and can enforce adherence to statutory standards") (quoting Yakus v. United States, 321 U.S. 414, 425 (1944) and citing

04-1160                                   6

<u>Youngstown Sheet & Tube Co. v. Sawyer</u>, 343 U.S. 579, 585 (1952)).  On this appeal

under the Administrative Procedure Act the panel majority neither remands to the district

court, nor explores the legal and policy-laden issue that is presented.  I respectfully dissent.