Opinion for the court filed by Circuit Judge CLEVENGER, Dissenting opinion filed by Circuit Judge NEWMAN.
CLEVENGER, Circuit Judge.
Star Fruits S.N.C. and Institute of Experimental Botany (“Star Fruits”) appeal the decision of the United States District Court for the Eastern District of Virginia denying Star Fruits’s motion for summary judgment and granting summary judgment in favor of the United States. Star Fruits S.N.C. v. United States, 280 F.Supp.2d 512 (E.D.Va.2003). Because *1280 the United States Patent and Trademark Office (“the Office”) did not act unlawfully when it deemed Star Fruits’s patent application abandoned for failing to respond to a Requirement For Information under 37 C.F.R. § 1.105, we affirm the judgment of the district court.
I
The facts of this case are straightforward. Star Fruits filed U.S. Patent Application No. 09/557,043, directed to a variety of peach tree. A subsequent Office Action included a “Requirement For Information Under 37 C.F.R. 1.105.” Specifically, the Office sought “any information available regarding the sale or other public distribution of the claimed plant variety anywhere in the world” and “copies of the application, published proposed denomination and published Breeder’s Right grant.” The Office further informed Star Fruits that to the extent Star Fruits did not have or could not readily obtain the required information, a statement to that effect would “be accepted as a complete response to the requirement for that item.”
Star Fruits declined to provide the required information on the grounds that it was “not material to patentability of the new variety.” The Response accompanying Star Fruits’s refusal to provide the required information did not state that Star Fruits did not have or could not readily obtain the information. Instead, the Response made clear that Star Fruits anticipated a rejection of its application under 35 U.S.C. § 102 if it complied with the Office’s requirement, that it viewed the prospective rejection based on the requested information as contrary to law, and that it refused to provide the information because it sought to prevent the Office from making the rejection.
The Office viewed Star Fruits’s refusal to provide the required information as a “deliberate omission, not a bona fide attempt at a complete response,” and issued a Notice of Abandonment. Pursuant to 37 C.F.R. § 1.181, Star Fruits petitioned the Director to require the Examiner to accept Star Fruits’s Response as complete. The Director denied the petition, stating:
The threshold for requiring information from applicants under 37 CFR 1.105 is that the information required is reasonably necessary to treat a matter in an application. The matter may or may not be related to patentability. The matter here is a matter of patentability and the information required is necessary for the examiner to make a reasoned judgment under 35 U.S.C. 102(b) of patenta-bility. Applicant’s arguments have not shown, in rebuttal, that the information requested to be provided is unnecessary or unreasonable. In contrast, the examiner has shown by appropriate arguments that the information requested is necessary under ex parte Thomson, 24 USPQ2d, 1618.
(J.A. at 98.) The Director reset the time period for Star Fruits to respond to the Requirement For Information to three months. Star Fruits requested reconsideration. The request was granted, the request for relief from the Requirement For Information was again denied, and the application was deemed abandoned.
Star Fruits brought suit in the district court. It claimed that the Office abused its discretion when it denied Star Fruits’s petition challenging the Requirement For Information because, as a matter of law according to Star Fruits, the information the Office sought could not be used to reject Star Fruits’s application. The district court disagreed, concluding that “such information as may be reasonably necessary to properly examine or treat the matter,” 37 C.F.R. § 1.105(a)(1), includes information that may not be directly used to *1281 reject an assertion of patentability. Star Fruits, 280 F.Supp.2d at 515-16. It further held that a section 1.181 petition is “the exclusive administrative check on the discretion of individual patent examiners before a determination has been made on the merits of an application,” and when the Director concluded that the requirement was proper, “Star Fruits had no choice but to comply.” Id. at 516. Accordingly, the district court held that by refusing to provide the required information, Star Fruits abandoned its application. Id. at 517.
II
Star Fruits appeals. Because this claim, brought pursuant to the Administrative Procedure Act (“APA”), see 5 U.S.C. §§ 702-706 (2000), involves the Director’s duties “[i]n the course of examining or treating a matter in [an application] ... in a patent, or in a reexamination proceeding,” 37 C.F.R. § 1.105(a)(1), it raises a substantial question under the patent laws, and, accordingly, we have jurisdiction under 28 U.S.C. § 1338(a) and 28 U.S.C. § 1295(a)(1) (2000). See Helfgott & Karas, P.C. v. Dickenson, 209 F.3d 1328, 1333-35 (Fed.Cir.2000).
We review the district court’s grant of summary judgment without deference, reapplying the same standard as the district court. See Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed.Cir.1994). Under the APA, courts “hold unlawful and set aside agency action ... found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 706(2); Arnold P’ship v. Dudas, 362 F.3d 1338, 1340 (Fed.Cir.2004). An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors. 362 F.3d at 1340.
III
Star Fruits’s contention on appeal is that the Director abused his discretion when he required compliance with the Requirement For Information because it was based on an erroneous interpretation of law. In particular, Star Fruits contends that the language, “such information as may be reasonably necessary to properly examine or treat the matter,” from section 1.105 may not include “any information available regarding the sale or other public distribution of the claimed -plant variety anywhere in the world” and “copies of the application, published proposed denomination and published Breeder’s Right grant.” This is so, according to Star Fruits, because the duty of candor embodied in 37 C.F.R. § 1.56, which requires applicants to disclose information material to patentability, controls section 1.105 requirements. The effect of this, again according to Star Fruits, is that an applicant need not comply with any section 1.105 requirement that seeks information that is not material to patentability. Here, Star Fruits extends this logic by equating the concept of “material to patentability” with information that directly supports a rejection. Moreover, Star Fruits asserts that the applicant, not the examiner, decides what information is material to patentability under section 1.56. Thus, in Star Fruits’s view, the Office cannot require information unless the product of the requirement will result in a rejection and were the Office to require any other information, section 1.56 affords Star Fruits the power to refuse the requirement. We respond first, in detail, to Star Fruits’s arguments.
A
i
Under 37 C.F.R. § 1.105 the Office can require information that does not *1282 directly support a rejection. An agency’s interpretation of its own regulations is entitled to substantial deference and will be accepted unless it is plainly erroneous or inconsistent with the regulation. See Eli Lilly & Co. v. Bd. of Regents of the Univ. of Wa., 334 F.3d 1264, 1266 (Fed.Cir.2003). Here, the Office considered information concerning any sale or public distribution of the claimed invention and any information concerning Breeder’s Rights applications or grants as within the authorized scope of a Requirement For Information under section 1.105.
This interpretation is not plainly erroneous or inconsistent with the regulation. Congress has delegated to the Office the rulemaking power to “establish regulations, not inconsistent with law, which — (A) shall govern the conduct of proceedings in the Office.” 35 U.S.C. § 2(b)(2) (2000) (formerly at 35 U.S.C. § 6(a) (1988), see Merck & Co. v. Kessler, 80 F.3d 1543, 1549-50 (Fed.Cir.1996)); Stevens v. Tamai, 366 F.3d 1325, 1333 (Fed.Cir.2004). Section 1.105 stems from an initiative entitled Changes to Implement the Patent Business Goals. Through notice and comment rulemaking the Office made explicit the inherent authority of Office employees to require information from an applicant. The goal is to “encourage” employees to use that power to “perform the best quality examination possible.” 65 Fed.Reg. 54,-604, at 54,633 (September 8, 2000) (to be codified at 37 C.F.R. pts. 1, 3, 5, 10); see also 64 Fed.Reg. 53,772 (proposed October 4, 1999); 63 Fed.Reg. 53,498 (proposed October 5, 1998). The final rule permits that “the examiner or other Office employee may require the submission ... of such information as may be reasonably necessary to properly examine or treat the matter.” 37 C.F.R. 1.105(a)(1) (emphasis added).
We think it clear that “such information as may be reasonably necessary to properly examine or treat the matter,” 37 C.F.R. 1.105(a)(1), contemplates information relevant to examination either procedurally or substantively. It includes a zone of information beyond that defined by section 1.56 as material to patentability, and beyond that which is directly useful to support a rejection or conclusively decide the issue of patentability. Several observations militate in favor of this conclusion.
First, under the current regulations an applicant has an affirmative duty to disclose information material to patentability. See 37 C.F.R. § 1.56. Because an applicant already has a duty to disclose this information, it makes no sense for the Office to promulgate a rule empowering it to “require the submission” of information the applicant is required to submit in the first instance.
Second, section 1.105 identifies the required information as that information “reasonably necessary to properly examine or treat the matter” instead of that information “material to patentability.” Under ordinary principles of interpretation, the choice of different language indicates a different intended meaning.
Third, the plain language of the regulation contemplates requirements for information that go beyond information required by section 1.56. For example, “any non-patent literature ... by any of the inventors, that relates to the claimed invention [,]” 37 C.F.R. § 1.105(a)(1)(iii) (emphasis added), could include sales brochures, catalogues, or PBR applications or grants. “/'AJny use of the claimed invention known to any of the inventors at the time the application was filed notwithstanding the date of the use,” id. § 1.105(a)(l)(vii) (emphasis added), could refer to uses that would not affect patenta-bility at all. Likewise, information direct *1283 ed to whether a search was conducted and what was searched, id § 1.105(a)(1)(h), is not necessarily required by section 1.56. Other requirements for information are also foreseeable under the “reasonably necessary to properly examine or treat the matter” standard. For instance, it might be reasonably necessary for the Office to require an explanation of technical material in a publication, such as one of the inventor’s publications, or require the applicant’s comments on a recent Federal Circuit opinion and how that opinion affects examination. See, e.g., 65 Fed.Reg. at 54,634. Although this information improves the quality and efficiency of examination it is not necessarily information that an applicant is required to provide under section 1.56.[1] In sum, we think that the Office’s interpretation of 37 C.F.R. § 1.105 conforms to the plain language of the regulation.
h
The duty of candor embodied in 37 C.F.R. § 1.56 does not give the applicant the power to refuse a Requirement For Information under section 1.105.[2] Neither regulation states that responses to Requirements For Information can be limited, at the applicant’s discretion, to whatever the applicant believes it might have been affirmatively required to submit under section 1.56.
Moreover, we think the language, “Office ... may require the submission ... of ... information”, 37 C.F.R. § 1.105(a)(1), very expressly states that the Office, not the applicant, controls the scope of the requirement. Because the scope of information “reasonably necessary to properly examine or treat the matter” is broader than that information the applicant is duty-bound to provide under section 1.56, we are convinced that the Office can require the applicant to submit such information when it is known or readily available.
B
Star Fruits’s argument fails to come to grips with the real issue in this case, which is whether the Office can use section 1.105 to compel disclosure of information that the examiner deems pertinent to patentability when the applicant has a contrary view of the applicable law. We answer this question in the affirmative.
The Office is clearly entitled to use section 1.105 to seek information that may support a rejection. Just as the applicant produces information it deems pertinent to patentability under section 1.56, the examiner is free to request information under section 1.105 that the examiner deems pertinent to the issue of patentability. In this case, the dispute over whether Star Fruits should be compelled to answer the examiner’s Requirement For Information under section 1.105 boils down to a disagreement between Star Fruits and the examiner as to the significance of the information sought to the ultimate question of whether Star Fruits’s application discloses patentable subject matter.
The Director is charged with the duty of deciding whether a patent should *1284 issue from an application. To perform that duty, the law must be applied to the facts at hand in any application. That the person charged with enforcement of the law, here an examiner, may sometimes disagree with the applicant on the theory or scope of the law to be applied is hardly surprising. So long as the request from the examiner for information is not arbitrary or capricious, the applicant cannot impede the examiner’s performance of his duty by refusing to comply with an information requirement which proceeds from the examiner’s view of the scope of the law to be applied to the application at hand. To allow such interference would have the effect of forcing the Office to make patent-ability determinations on insufficient facts and information. Such conduct inefficiently shifts the burden of obtaining information that the applicant is in the best position to most cheaply provide onto the shoulders of the Office and risks the systemic inefficiencies that attend the issue of invalid patents. Examination under such circumstances is neither fair and equitable to the public nor efficient.
IV
Star Fruits alternatively argues that the information sought is not relevant to the examination process and that the request was therefore improper. APA challenges in cases like this are not properly directed to prospective patentability determinations. A claim that the Office is abusing its discretion in seeking information from an applicant because the Office might (or will) use that information to enter a rejection is a preemptive challenge to the Office’s patentability determination. Assuming the Office intended to enter a rejection under 35 U.S.C. § 102(b), the correctness vel non of that rejection is not properly challenged by Star Fruits withholding information from the Office. Instead, Star Fruits must await a rejection under section 102(b) and then litigate the propriety of that rejection before the proper forum for such a complaint, in the first instance, the Board of Patent Appeals and Interferences, not the district court. See 35 U.S.C. § 134(a) (2000). Preempting the Office’s decision-making by refusing reasonable requirements for information is not a course calculated to achieve a timely and equitable determination of whether a patent should be granted.
In the matter at hand, the Examiner’s Requirement For Information was not unreasonable and was within the scope of section 1.105. Accordingly, there is no abuse of discretion or arbitrary or capricious conduct in the Director’s decision to refuse to grant Star Fruits’s petition under 37 C.F.R. § 1.181 either initially or on reconsideration. Star Fruits abandoned its application.
As noted above, the district court viewed the section 1.181 petition process as the “exclusive administrative check” on the discretion of examiners to seek information from applicants under section 1.105. The district court feared finding itself in the position of a “super patent examiner” were it called upon to second-guess the actual examiner by deciding whether the required information could support a section 102(b) bar to patentability. 280 F.Supp.2d at 516. To the extent the district court deemed itself powerless to review the final action of the Office deeming Star Fruits’s application as abandoned, it erred.
Whether information sought by an examiner under section 1.105 could or would lead to a rejection of the application on its merits does not, for the reasons we have expressed, define the limits of the information that lawfully may be sought by an examiner. So long as there is some legitimate reason for seeking the information under section 1.105, the applicant has *1285 a duty to respond. If the examiner deems the information sought pertinent to the legal inquiry the examiner must conduct, the fact that the examiner’s theory is incorrect is no ground on which the applicant may refuse to comply with a request for information. The Office is authorized under section 1.105 to require any information that is either relevant to patentability under any nonfrivolous legal theory, or is reasonably calculated to lead to such relevant information.
If the Director decides, on challenge under section 1.181, that a requirement for information is proper, the applicant may challenge that decision under thé APA. The scope of APA review is not, as the district court feared, to test the examiner’s theory of the case or the examiner’s findings of fact. The district court, on APA review, does not enmesh itself in the decision-making process of the examiner. Its function, instead, is simply to guard against the possibility of arbitrary or capricious behavior by examiners in seeking information.
Given the review process, first by the examiner and then by the Director, each receiving argument from the applicant, we think it unlikely that many requirements for information will be unreasonable or beyond the scope of section 1.105. However, without mentioning specifics, we imagine that there may be cases where the Office might abuse its discretion or behave arbitrarily and capriciously in connection with a requirement for information. For that reason, this decision should not be read as affirming a holding that no APA claim is possible after the Director’s action.
V
Because the Requirement For Information was within the scope of 37 C.F.R. § 1.105 and not unreasonable, the judgment of the district court is affirmed.
AFFIRMED

. The dissent also cites section 2001.05 of the Manual of Patent Examining Procedure, which states: “If the information is not material, there is no duty to disclose it to the Office.” This is merely cumulative with Star Fruits's argument that section 1.56 limits section 1.105, since MPEP § 2001.05 is entitled “Materiality Under 37 C.F.R. 1.56(b).”

. Of course the duty of candor and the requirement that an applicant behave equitably in its transactions with the Office still applies to responses to Requirements For Information.