Slip Op. 09-35

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, LOCAL 2911, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES SECRETARY OF LABOR, <br><br> Defendant. | Before: Richard K. Eaton, Judge <br><br> Court No. 04-00492 |

OPINION

[United States Department of Labor's final negative determination on remand denying plaintiff's application for trade adjustment assistance sustained.]

Dated: April 30, 2009

*Stewart and Stewart* (*Terence P. Stewart*, *Elizabeth J. Drake*, and *Philip A. Butler*), for plaintiff.

*Michael F. Hertz*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Russell A. Shultis*), for defendant.

Eaton, Judge: In *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 2911 v. United States Secretary of Labor*, 32 CIT __, Slip Op. 08-45 (Apr. 30, 2008) (not reported in the Federal Supplement) ("*Steelworkers II*"), the court remanded

this matter to the United States Department of Labor ("Labor" or the "Department") for further explanation of its determination to deny plaintiff ISU's[1] request for an extension of Weirton Steel Corporation's ("Weirton") Trade Adjustment Assistance ("TAA") eligibility certification from April 23, 2004 to May 18, 2004. On remand, the Department has again reached a negative determination. *See* Negative Determination on Remand, TA-W-54,455, Weirton Steel Corp., Weirton, WV (Dep't of Labor Aug. 28, 2008) (the "Remand Results").

As in *Steelworkers II*, jurisdiction lies under 28 U.S.C. § 1581(i)(4). *See* 32 CIT at __, Slip Op. 08-45 at 3-4; *Indep. Steelworkers Union v. U.S. Sec'y of Labor*, 30 CIT 1793, 1803-08, Slip Op. 06-171 at 21-30 (Nov. 17, 2006) (not reported in the Federal Supplement) ("*Steelworkers I*") ("It is clear that plaintiff's action seeking review of the Department's denial of its amendment request is a challenge to the Department's administration and enforcement of 19 U.S.C. §§ 2272 and 2273."). For the following reasons, Labor's negative determination embodied in its Remand Results is sustained.

---

[1]  For purposes of continuity, the court again refers to plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 2911 as "ISU," in reference to its former name, Independent Steelworkers Union.

BACKGROUND

Weirton was a steel producer.  Because the company was faced with "serious difficulties due to import surges" and financial hardship, ISU petitioned Labor in mid-2001 to establish the eligibility of the Weirton workers to apply for TAA benefits.[2]

_____

[2] The group eligibility requirements for TAA benefits are as follows:

> (a) In general
>
> A group of workers (including workers in any agricultural firm or subdivision of an agricultural firm) shall be certified by the Secretary as eligible to apply for adjustment assistance under this part pursuant to a petition filed under section 2271 of this title if [Labor] determines that--
>
> (1) a significant number or proportion of the workers in such workers' firm, or an appropriate subdivision of the firm, have become totally or partially separated, or are threatened to become totally or partially separated; and
>
> (2)(A)(i) the sales or production, or both, of such firm or subdivision have decreased absolutely;
>
> (ii) imports of articles like or directly competitive with articles produced by such firm or subdivision have increased; and
>
> (iii) the increase in imports described in clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm or subdivision; or
>
> (B)(i) there has been a shift in production by such workers' firm or subdivision to a foreign country of articles like or directly

(continued...)

Pl.'s Rule 56.1 Mot. for J. Agency R. ("Pl.'s Br.") 3-4 (citations omitted).  Labor's determination was affirmative and the resulting certification found all Weirton workers, who became totally or partially separated from employment on or after July 3, 2000, eligible to apply for TAA cash benefits.  *See* Notice of Determinations Regarding Eligibility to Apply for Worker Adjustment Assistance and NAFTA Traditional Adjustment Assistance, 67 Fed. Reg. 22,112 (Dep't of Labor May 2, 2002) (the "2002 Certification").  Under the statute, the 2002 Certification was to remain in effect for two years from the date of certification, and thus expire on April 23, 2004.  *See* 19 U.S.C. § 2291(a)(1)(B).

---

[2](...continued)
        competitive with articles which are produced
        by such firm or subdivision; and

        (ii)(I) the country to which the workers'
        firm has shifted production of the articles
        is a party to a free trade agreement with the
        United States;

        (II) the country to which the workers' firm
        has shifted production of the articles is a
        beneficiary country under the Andean Trade
        Preference Act, African Growth and
        Opportunity Act, or the Caribbean Basin
        Economic Recovery Act; or

        (III) there has been or is likely to be an
        increase in imports of articles that are like
        or directly competitive with articles which
        are or were produced by such firm or
        subdivision.

19 U.S.C. § 2272.  *See also* 19 U.S.C. §§ 2271, 2273.

In May 2003, however, approximately one year prior to the 2002 Certification's expiration, Weirton filed for Chapter 11 bankruptcy. *See* Pl.'s Br. 7; *see also* Weirton Steel Corp. Voluntary Pet. Chapter 11 Bankr., Admin. R. ("AR") at 188-89. Thereafter, Weirton officials agreed to sell the company's assets to its competitor International Steel Group ("ISG"). *See* Pl.'s Br. 8. To complete the sale, Weirton retained some of its workers to maintain the plant and to ensure a smooth transition of its facility to the new owners. *See* Letter Dated Sept. 14, 2004 from Mr. Terence P. Stewart to Labor, Suppl. Admin. R. ("SR") at 12-15 (the "Stewart Letter").

On March 9, 2004, ISU filed a new petition with Labor seeking TAA re-certification for Weirton's workers based on facts present during an investigatory period covering the year prior to the petition's filing (March 9, 2003, through March 9, 2004). *See* Weirton Steel Corp. Petition for TAA Dated Mar. 9, 2004 (the "2004 Petition"), AR at 2-40. Labor issued a negative determination with respect to this petition on May 14, 2004, finding that Weirton's workers failed to meet the statutory requirements for certification. That is, Labor found that, during the investigatory period, increased steel imports did not contribute importantly to the worker separations. *See* Weirton Steel Corp., Weirton, WV: Negative Determination Regarding Eligibility To Apply for Worker Adjustment Assistance and

Alternative Trade Adjustment Assistance (Dep't of Labor May 14, 2004), AR at 101-03 (the "Negative Determination"); Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance, 69 Fed. Reg. 31,134, 31,135 (Dep't of Labor June 2, 2004) (notice).

Thereafter, on July 23, 2004, Labor denied plaintiff's request for administrative reconsideration of the Negative Determination.  *See* Weirton Steel Corp., Weirton, WV: Notice of Negative Determination Regarding Application for Reconsideration (Dep't of Labor July 23, 2004), AR at 195-97 (the "Reconsideration Denial"); Weirton Steel Corp., Weirton, WV: Notice of Negative Determination Regarding Application for Reconsideration, 69 Fed. Reg. 47,184 (Dep't of Labor Aug. 4, 2004) (notice).

On September 14, 2004, having failed to secure benefits by way of a re-certification, ISU wrote Labor to "formally request that [Labor] amend the [2002] TAA certification to change its expiration date from April 23, 2004, to May 18, 2004, so as to include all workers of Weirton Steel who were adversely affected by increased imports."  *See* Stewart Letter, SR at 12-15.  The Stewart Letter details the circumstances that ISU believed justified an amendment to extend the 2002 Certification. Specifically, it recounts that the 2002 Certification's expiration date of April 23, 2004 "came just a few weeks before

substantially all of the production assets of Weirton Steel

Corporation were acquired out of bankruptcy" by ISG, and that on

May 18, 2004 the company ceased to produce steel.  *See* Stewart

Letter, SR at 13.  It is those workers who remained with the

company for the three to four weeks after the 2002 Certification

expired, but before the Weirton sale was completed, that were the

subject of Weirton's request to extend the 2002 Certification.

Stewart Letter, SR at 13-14.

According to plaintiff, the remaining workers "were engaged

in preserving Weirton's assets and facilities and preparing them

for the sale to ISG."[3]  Stewart Letter, SR at 14.  Plaintiff

maintained that only an amendment of the 2002 Certification

"would ensure that all the workers of Weirton Steel who were

adversely affected by increased imports are included under [the

2002] Certification and eligible for needed assistance."  Stewart

Letter, SR at 14.

In addition, the Stewart Letter stated that it was

plaintiff's "understanding that the Department has previously

amended TAA certifications to extend the period of eligibility

where workers have been retained beyond the original expiration

date of a certification."  Stewart Letter, SR at 14 n.5 (citing

---

[3]  The Stewart Letter recounts ISU's filing of the 2004 Petition and Labor's subsequent Negative Determination and Reconsideration Denial, since sustained by this court in *Steelworkers I*.  *See* Stewart Letter, SR at 14; *Steelworkers I*, 30 CIT at 1803, Slip Op. 06-171 at 31.

O/Z-Gedney Co., Div. of EGS Elec. Group, Terryville, CT: Amended Certification Regarding Eligibility To Apply for Worker Adjustment Assistance, 69 Fed. Reg. 43,454 (Dep't of Labor July 20, 2004) ("*O/Z-Gedney*"); Wiegand Appliance Div., Emerson Elec. Co., Vernon, AL: Amended Certification Regarding Eligibility To Apply for Worker Adjustment Assistance, 58 Fed. Reg. 50,198 (Dep't of Labor Aug. 20, 2003) ("*Wiegand*")).

By letter dated September 24, 2004, Labor denied ISU's amendment request for two reasons. *See* Letter Dated Sept. 24, 2004 from Labor to Mr. Terence P. Stewart, SR at 16-17 (the "Denial Letter"). The first was that the facts presented in this case were distinguishable from the facts of the two certifications cited in plaintiff's amendment request (*O/Z-Gedney* and *Wiegand*) because, in the case of the Weirton facility, production at the plant continued, whereas in the other cases "workers were retained to assist with the plant closure *after* production had ceased." *See* Denial Letter, SR at 16 (emphasis added). The second reason was that, after a "full and careful investigation for the relevant period," Labor determined that workers' separation from the company was not due to an increase in imports. This second reason was apparently a reference to the 2004 Petition for re-certification. *See* Denial Letter, SR at 16.

In *Steelworkers I*, the court sustained the denial of benefits pursuant to the 2004 Negative Determination and

Reconsideration Denial.  *See* 30 CIT at 1803, Slip Op. 06-171 at 21 (sustaining the Department's determination "because the evidence supports Labor's conclusion that plaintiff did not satisfy the statutory requirements for certification").  The court, however, refrained from reaching the merits of ISU's amendment request pending the submission of a supplemental administrative record.  *See id.* at 1808, Slip Op. 06-171 at 31.

Following submission of the supplemental administrative record, further briefing, and review, the court in *Steelworkers II* held that Labor did not explain adequately its decision to deny ISU's request to amend Weirton's 2002 Certification until May 18, 2004.  *See Steelworkers II*, 32 CIT at __, Slip Op. 08-45 at 25-27.  Accordingly, *Steelworkers II* remanded this matter to Labor with instructions that the Department further explain its determination.  *See* 32 CIT at __, Slip Op. 08-45 at 26-27.

STANDARD OF REVIEW

In cases brought under 28 U.S.C. § 1581(i), this Court applies the default standard of review set forth in the Administrative Procedure Act ("APA") and therefore will "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."  *See* 5 U.S.C. § 706(2)(A); *see also Former Employees of Alcatel Telecomms.*

*Cable v. Herman*, 24 CIT 655, 658-59, Slip Op. 00-88 at 6-7 (2000) (not reported in the Federal Supplement).  Under this standard, "the court (1) must consider whether the decision was based on a consideration of relevant factors and whether there has been a clear error of judgment, and (2) analyze whether a rational connection exists between the agency's factfindings and its ultimate action."  *See Consol. Fibers, Inc. v. United States*, 32 CIT __, __, 535 F. Supp. 2d 1345, 1354 (2008).  Further, the APA provides that, "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."  5 U.S.C. § 706.

DISCUSSION

I.  Remand Results

In the Remand Results, Labor states that its current policy regarding amendment requests (which it insists has been in effect throughout all proceedings in this case), is to ensure that "the certification [will] cover all workers . . . who were adversely affected by increased imports of the article produced by the firm or a shift in production of the article, based on the investigation of the petition."  Remand Results at 13.  Despite the absence of a statutory or regulatory provision on point, the

Department explains that it "has and continues to amend the
expiration date of certifications when the facts of the case show
that the later worker separations are attributable to the basis
for [the original] certification (the increased imports or shift
of production to a foreign country)."  Remand Results at 13.
According to the Department, using the same standard to grant a
certification in the first instance or extend a certification
comports with the remedial nature of the TAA statute.  *See* Remand
Results at 13-14.

In addition, Labor notes that amendment requests are rare.
Remand Results at 17.  When it receives such requests, however,
the Department states that it reviews them on a case-by-case
basis to determine if those worker separations occurring after
the certification's expiration date are also "attributable" to
the basis of the original certification.  *See* Remand Results at
17.  Labor explains that

> the earlier and later separated workers must
> have identical characteristics (same
> location, same article, and same basis for
> certification) aside from dates of
> separation.  It must also be shown that the
> predominant important cause of the later
> worker separation is identical to the
> conditions that were the basis for the
> certification of the earlier separated
> workers.[4]

---

[4]  Labor elaborated:

> If the certification was based on increased

(continued...)

Remand Results at 17.

The Department further insists that there has been no change in its policy over time.[5]  *See* Remand Results at 15 (citing Thomson, Inc., Circleville Glass Operations, Circlesville, OH: Amended Certification Regarding Eligibility To Apply for Worker Adjustment Assistance and Alternative TAA, 72 Fed. Reg. 5,750 (Dep't of Labor Feb. 7, 2007) (notice) ("*Thomson*")).  Finally, Labor states:

> The Department has not, to the best of our knowledge, amended a certification to extend the expiration date except in limited circumstances when there has been a plant closing and a small number of workers are retained past the 2-year expiration date to complete shutdown activities.  The intent of the Department in these cases, as in all cases, is for the amended certification to cover all adversely affected workers at the subject firm or appropriate subdivision (based on the investigation of the petition).

Remand Results at 15.

---

[4](...continued)
> imports, the petitioning worker group must show that the increased imports (same article, same time periods, etc.) contributed importantly to their separations; if the certification was based on a shift of production, the petitioning worker group must show that the same shift of production (same article, same country, etc.) was the basis for their separations.

Remand Results at 17.

[5]  Given this assertion, it is not unexpected that the Remand Results also state that Labor has taken no steps to notify the public of any policy change.  *See* Remand Results at 16.

As to the significance of Weirton's plant remaining open, the Remand Results state that Labor's focus in assessing amendment requests is not on production facility closure, but rather on determining if the later separated workers were terminated for the same reasons that formed the basis of the original certification.[6] *See* Remand Results at 18-19. The Department thus maintains that "if there was a change in circumstance that prevents a causal nexus between the workers' separation and the basis for certification, then the Department cannot find that the workers' separation is attributable to the basis" for the 2002 Certification. Remand Results at 18. In Labor's view, a production facility's closure (accompanied with worker separations) tends to demonstrate the causal nexus required to tie the later separated workers to those separated earlier, and thus to grant an amendment. *See* Remand Results at 19. Furthermore, the Department notes that its investigation

---

[6] Labor's original Denial Letter to the Weirton workers referenced both continued production and plant closure as being significant. In distinguishing Weirton's situation from past cases, the Department wrote:

> In each of these cases [referring to *O-Z/Gedney* and *Wiegand*], workers were retained to assist with the plant closure after production had ceased. This is not the case for workers at Weirton Steel. Production of steel products at the Weirton, West Virginia plant continued during the period relevant to the investigation.

Denial Letter, SR at 16-17.

following the 2004 revealed, not only that the Weirton plant had not closed, but that during the period of investigation "sales of the subject firm increased" and "there were declining imports or little or no increase in imports during the relevant period." Remand Results at 19 (citation omitted).

In response to the court's order directing further explanation as to why Labor treated those workers separated from the company after April 23, 2004 differently from those losing their jobs before that date, the Remand Results stress that the Department distinguished between these workers "because the workers separated before April 23, 2004 belong to a separately identifiable worker group."  Remand Results at 20.  That is, Labor found that they were not separated due to the impact of foreign trade because its investigation of the period preceding the 2004 Petition revealed that increased steel imports did not contribute importantly to their eventual separation.  *See Steelworkers I*, 30 CIT at 1803, Slip Op. 06-171 at 21.  Thus, Labor asserts, "[w]hile the certification of workers separated on or before April 23, 2004 was based on increased imports, worker separations after April 23, 2004 resulted from ISG's decision not to continue to employ the Weirton production workers when it purchased the operating Weirton plant as part of the May 18, 2004 sale."  Remand Results at 20-21 (internal citations omitted).

In order to address the court's instruction to explain how

the Remand Results comport with previous investigations that resulted in Labor granting amendment requests, the Department examines three prior cases: (1) *O/Z-Gedney*, 69 Fed. Reg. at 43,454; (2) *Wiegand*, 68 Fed. Reg. at 50,198; and (3) *Thomson*, 72 Fed. Reg. at 5,751. Labor states that *O/Z-Gedney* is distinguishable because there the Department amended the certification to include a single worker retained at the firm assisting with the closedown process. It adds: "The Department amended the certification because there was a causal nexus between the workers' [sic] separation and the plant closure that was the result of increased imports." Remand Results at 21.

As for *Wiegand*, the Department notes that workers in that case were also engaged in activities related to a production facility closure. Remand Results at 22 (stating that the "workers completed the tracking of outstanding customer orders until their termination"). It again states: "The Department amended the certification because there was a causal nexus between the worker's [sic] separation and the plant closure that was the result of increased imports." Remand Results at 22. Likewise, with respect to *Thomson*, the Remand Results state that the subject workers were retained for decommissioning activities pursuant to state regulation, and the amendment request was granted because Labor determined that there was no break in causation. Remand Results at 22-23.

Accordingly, Labor states that these past "amendments were based on findings that increased imports adversely affected the workers separated after the expiration of the certification." Remand Results at 23. In contrast, "[t]he Weirton workers separated after the plant's acquisition by ISG were not engaged in the closedown of that facility, but were actually involved in production and maintenance of the plant." Remand Results at 23.

Finally, with respect to the court's instruction to the Department for it to explain why its determination is consistent with the remedial nature of the TAA statute, Labor states that, although remedial, "the statute does not authorize the granting of certification, unlimited by time, in every situation involving a sympathetic fact pattern." Remand Results at 23-24.

II. Prior to the Issuance of the Remand Results, the Department Had No Articulated Policy for Extending Certifications

Despite its claims to the contrary, it is apparent that the Department had no articulated policy with respect to extensions of certifications prior to the issuance of the Remand Results in this case. While it may be that in its internal discussions Labor took into account the factors set forth in the TAA statute at 19 U.S.C. § 2272, its previous determinations extending certification did not enunciate reliance on those factors. Indeed, the Department's prior determinations do no more than briefly recite the facts surrounding the decisions to extend the

subject certifications and state that Labor's intent is to

include workers adversely affected by increased imports under

certifications.

In *O/Z-Gedney*, for example, Labor's Federal Register notice

reads in its entirety:

> In accordance with section 223 of the Trade
> Act of 1974 (19 U.S.C. 2273) the Department
> of Labor issued a Certification of
> Eligibility to Apply for Worker Adjustment
> Assistance on March 27, 2001, applicable to
> workers of O/Z-Gedney Company, Div. of EGS
> Electrical Group, Terryville, Connecticut.
> The notice was published in the Federal
> Register on April 16, 2001 (66 FR 19521).  At
> the request of a company official, the
> Department reviewed the certification for
> workers of the subject firm.  The workers
> were engaged in the production of electrical
> fittings for the non-residential construction
> industry.  New information shows that a
> worker, Ms. Jacqueline Lancioni, was retained
> at the subject firm beyond the March 27,
> 2003, expiration date of the certification.
> This employee was engaged in activities
> related to the close-down process until her
> termination on March 26, 2004.  Based on
> these findings, the Department is amending
> the certification to extend the March 27,
> 2003, expiration date for TA-W-38,569 to read
> March 26, 2004.  The intent of the
> Department's certification is to include all
> workers of O/Z-Gedney Company, Div. of EGS
> Electrical Group, who were adversely affected
> by increased imports. The amended notice
> applicable to TA-W-38,569 is hereby issued as
> follows:
>
>> A worker of O/Z-Gedney Company,
>> Div. of EGS Electrical Group,
>> Terryville, Connecticut, who became
>> totally or partially separated from
>> employment on or after January 5,
>> 2000, through March 26, 2004, is

> eligible to apply for adjustment
> assistance under section 223 of the
> Trade Act of 1974.

69 Fed. Reg. at 43,454. Likewise, the Department's notice in *Wiegand* reads much the same way. *See* 68 Fed. Reg. at 50,198.

Neither *O/Z-Gedney* nor *Wiegand* sets forth the policy claimed by Labor here, i.e., that Labor will amend expiration dates "when the facts of the case show that the later worker separations are attributable to the basis for [the original] certification (the increased imports or shift of production to a foreign country)." Remand Results at 13. Nor does either determination state any facts demonstrating that Labor was acting in a way consistent with its claimed policy.

Labor's determination in *Thomson* begins to suggest a policy because the Department engaged in a "nexus" analysis consistent with the policy it claims here. *See* 72 Fed. Reg. at 5,751 (stating that "the Department determined that there was a causal nexus between the subject firm's shutdown of operations and the shutdown workers' separations and that, therefore, the separations of the workers . . . [after the certification's expiration] are attributable to the conditions specified in section 222 of the Trade Act"). *Thomson* goes on to state, however, that "[t]he Department's decision in this case is limited to the precise circumstances of this specific case and should not be considered as any indication of how the Department

would proceed in other cases or in any subsequent rulemaking on this subject." *Id.*

As a result, while it appears the Department has previously acted in a manner consistent with the policy it has now set forth, the court finds that it had no articulated policy at the time the determination not to extend the 2002 Certification was made.

III. The Department Did Not Act in an Arbitrary or Capricious Manner

While Labor had no declared policy with respect to the granting of extensions when it declined to extend Weirton's certification, this does not end the court's inquiry.  The court must decide whether the Department's action in this case violated the APA's arbitrary and capricious standard.  *See* 5 U.S.C. § 706(2)(A).  Indeed, in addition to citing to its past practice, Labor also claims that it evaluates extension requests on a case-by-case basis.  *See* Remand Results at 17.  Having examined the manner by which Labor reached its result in this case, the court concludes that the Department did not abuse its discretion or act contrary to law in reaching its determination.

The court bases this conclusion primarily on Labor's denial of ISU's 2004 Petition.  As previously noted, ISU petitioned Labor seeking re-certification for Weirton's workers on March 9, 2004, i.e., before the 2002 Certification expired and before ISU

asked to extend that certification. *See* 2004 Petition, AR at 2-40. In its Negative Determination on the 2004 Petition, Labor found that during the one-year period prior to the 2004 Petition's filing (March 9, 2003, through March 9, 2004), Weirton's steel sales increased, and the company "did not import the products it produces . . . ." Negative Determination, AR at 102. Therefore, Weirton's workers were denied eligibility to apply for TAA benefits. Negative Determination, AR at 103.

The court sustained these findings in *Steelworkers I*. *See* 30 CIT at 1803, Slip Op. 06-171 at 21. Thus, the important distinction between this case and those relied upon by plaintiff is that, here, there is an intervening determination finding that Weirton's workers were not injured by imports during the period March 9, 2003, through March 9, 2004. *See* Pl.'s Comments 3 (citing Am. Standard, Inc., Trenton, NJ: Amended Eligibility to Apply for Worker Adjustment Assistance, TA-W-38,582, 68 Fed. Reg. 43,757 (Dep't of Labor July 24, 2004)). This determination found that the evidence did not support a finding that Weirton was still faced with increased steel imports that contributed importantly to worker separations. Thus, unlike the cases on which plaintiff relies, here there was substantial evidence establishing that Weirton's workers were not separated from their employment due to the impact of foreign trade, as 19 U.S.C. § 2272 requires. In other words, substantial record evidence

demonstrated that the conditions that led to the 2002 Certification no longer existed at the time the workers were separated.

This situation is thus distinguishable from the Department's determination in *Thomson*.  In *Thomson*, the remaining workers would have been separated during the certification period had they not been required by state regulation to stay on the job in order to submit a plan concerning the removal of hazardous materials from the facility.  *Thomson*, 72 Fed. Reg. at 5,750. Put another way, but for the state regulatory requirements, the remaining workers would have been terminated prior to the expiration of the certification.  Therefore, the reason for their ultimate termination was the impact of foreign trade.  This contrasts with Weirton's situation where Labor's intervening investigation revealed just the opposite—that the company's remaining workers were not, in fact, terminated due to the impact of foreign trade.

As a result, the court cannot conclude that Labor's reliance on the results of its intervening investigation, which this court sustained in *Steelworkers I*, "represents an unreasonable judgment in weighing relevant factors" so as to render its determination arbitrary and capricious.  *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (citation omitted).  In the Remand Results, the Department explained that the workers who

lost their jobs after April 23, 2004 "belong in a worker group that is separately identifiable" from those who lost their jobs prior to April 23, 2004 because of both the operation of the law and by reason of intervening facts. Remand Results at 20. That is, the Department reasoned that the 2002 Certification expired on April 23, 2004 by operation of 19 U.S.C. § 2291(a)(1)(B), and after that point, it became Labor's duty to assess whether "the events that caused the separations after April 23, 2004 are identical to those that were the basis for the certification." Remand Results at 20. In turn, the Department concluded that these workers were not, in fact, similarly situated because Weirton's post-April 23, 2004 workforce was separated from the company because of ISG's decision not to keep these workers on, rather than from increased imports. *See* Remand Results at 20-21. Notwithstanding the court's finding that Labor has had no clear policy for certification extensions prior to the issuance of the Remand Results, the court cannot conclude that this distinction was unreasonable.

CONCLUSION

The court finds that the Department's Remand Results are sufficiently in accordance with the instructions set forth in its prior opinion. Accordingly, the court further finds that Labor acted within its discretion, and did not act in an arbitrary and

capricious manner, in concluding that an amendment to the 2002 Certification was not warranted here.  Therefore, for the reasons stated, the Remand Results are sustained.  Judgment shall be entered accordingly.


                                        /s/Richard K. Eaton
                                        Richard K. Eaton



Dated:     April 30, 2009
           New York, New York