# United States Court of Appeals for the Federal Circuit

---

**GILBERT P. HYATT,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES PATENT AND TRADEMARK OFFICE, KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendants-Appellees*

---

2021-2324

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:20-cv-00487-CMH-IDD, Senior Judge Claude M. Hilton.

---

Decided: September 8, 2022

---

ANDREW M. GROSSMAN, Baker & Hostetler LLP, Washington, DC, argued for plaintiff-appellant. Also represented by MARK W. DELAQUIL.

PETER JOHN SAWERT, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for defendants-appellees. Also represented by

THOMAS W. KRAUSE, ROBERT MCBRIDE, AMY J. NELSON, FARHEENA YASMEEN RASHEED; JESSICA D. ABER, Office of the United States Attorney for the Eastern District of Virginia, United States Department of Justice, Alexandria, VA.

————————————

Before MOORE, *Chief Judge*, PROST and HUGHES, *Circuit Judges*.

PROST, *Circuit Judge*.

Following decades of patent-related litigation, patent applicant Gilbert P. Hyatt submitted significant claim amendments for his U.S. Patent Application No. 08/435,938 ("the '938 application") in August 2015. A Patent and Trademark Office ("PTO") examiner then issued a restriction requirement for seven of eight claims that Mr. Hyatt had selected for examination. Mr. Hyatt filed a complaint in the Eastern District of Virginia alleging, among other things, that the restriction requirement was improper, such that the PTO violated 5 U.S.C. § 706. The district court disagreed; it determined that 37 C.F.R. § 1.129 ("Rule 129") permitted the restriction requirement for Mr. Hyatt's '938 application. The district court accordingly granted the PTO's motion for summary judgment and denied Mr. Hyatt's competing motion. Mr. Hyatt appeals. We affirm.

## BACKGROUND

### I

Congress passed the Uruguay Round Agreements Act ("URAA") in part to amend the term of U.S. patent protection: now, as of June 8, 1995, patent terms are 20 years from the effective filing date instead of 17 years from the grant date. Pub. L. No. 103-465, 108 Stat. 4809, 4984 (1994) (codified at 35 U.S.C. § 154(a)(2)). The prior patent term, tied to the grant date, "incentivized certain patentees

to delay prosecuting their patents by abandoning applications and filing continuing applications in their place." *Hyatt v. Hirshfeld*, 998 F.3d 1347, 1351 (Fed. Cir. 2021). The URAA changed the incentives to promote timely disclosure of innovations by instead tying the patent term to the effective filing date. *See id.* at 1352.

But the change in law left a gap for so-called transitional applications—those filed but not yet granted before the URAA took effect. This "triggered a patent application gold rush in the spring of 1995" by applicants who wanted their patent claims to be governed under the pre-URAA patent term. *Id.* "For example, in the nine days leading to June 8, 1995, the PTO reported that it received and processed over 50,000 applications—one-quarter of the entire year's projected filings." *Id.* at 1353. This gold rush is "often referred to as the 'GATT Bubble.'" *Id.* at 1352.

URAA section 532 addresses those GATT Bubble transitional applications. For transitional applications that had been pending for two years or longer as of June 8, 1995,[1] it directs the PTO to "prescribe regulations to provide for further limited reexamination of" those applications. 108 Stat. at 4985. And for applications that had been pending for three years or longer as of June 8, 1995, it instructs the PTO to "prescribe regulations to provide for the examination of more than [one] independent and distinct invention." *Id.*

Congress further instructed that then-President Clinton's statement of administrative action ("SAA") "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the" URAA "in any judicial proceeding in which a question

---

[1]    The URAA accounts for claims of priority to earlier-filed applications in determining how long a patent application has been "pending." *See* 108 Stat. at 4984–85.

arises concerning such interpretation or application." 19 U.S.C. § 3512(d); *see also* H.R. Doc. No. 103-316 (1994) (SAA).

The PTO promulgated Rule 129 pursuant to its authority provided by the URAA and informed by the SAA. In particular, Rule 129(b)(1)(ii) provides:

> (1) In an application . . . that has been pending for at least three years as of June 8, 1995 . . . , *no requirement for restriction . . . shall be made or maintained* in the application after June 8, 1995, *except where*:
>
> . . . .
>
> (ii) The examiner has not made a requirement for restriction in the present or parent application prior to April 8, 1995, *due to actions by the applicant . . . .*

37 C.F.R. § 1.129(b)(1)(ii) (emphasis added).

## II

Mr. Hyatt filed the '938 application, which claims priority to applications filed as early as 1983, during the GATT Bubble on May 5, 1995. The PTO completed an initial examination of those claims in 2003, but from 2003 to 2012, "the PTO stayed the examination of many of [Mr.] Hyatt's applications pending litigation." *Hyatt*, 998 F.3d at 1354.

In October 2013, an examiner instructed Mr. Hyatt to select a number of claims from his '938 application for examination as part of the PTO's efforts to manage Mr. Hyatt's approximately 400 pending patent applications. Mr. Hyatt complied, under protest, and selected eight claims out of the approximately 200 in that application. The Examiner issued a non-final rejection of those claims in February 2015, and, in August of that year, Mr. Hyatt responded with significant claim amendments. By way of

example, Mr. Hyatt entirely rewrote one of the selected claims, sparing only the preambular terms "A" and "comprising."

The Examiner determined that these claim amendments shifted seven of the eight selected claims to a different species of computer systems and processes. As a result, the Examiner issued a restriction requirement between the originally selected claims and the amended claims, still allowing Mr. Hyatt to prosecute his amended claims but forcing him to do so in a new, separate application.[2]

Mr. Hyatt filed a complaint in the Eastern District of Virginia. He alleged in relevant part that the PTO's restriction requirement violated the Administrative Procedure Act ("APA") as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law since restriction requirements are generally not permitted for transitional applications like the '938 application and no exception to that rule applied. *See* J.A. 41 (citing 5 U.S.C. § 706); *see also Hyatt v. U.S. Pat. & Trademark Off.*, 551 F. Supp. 3d 600, 605 (E.D. Va. 2021). Mr. Hyatt and the PTO filed competing motions for summary judgment. The district court granted the PTO's motion and denied Mr. Hyatt's motion. J.A. 14. As the district court explained,

> [Mr. Hyatt] failed to disclose claims to a separate invention and attempted to file them many years after 1995. Withholding these claims is an action by the applicant that falls within [Rule 129(b)(1)(ii)'s applicant-action] exception to the general rule prohibiting restriction

---

[2]    This meant, at a minimum, that Mr. Hyatt's amended claims would be subject to the new patent term— 20 years from the effective filing date. *See* Appellant's Br. 5 n.1.

requirements on transitional applications.    The
[Examiner] was thus within his authority to im-
pose a restriction requirement under [that] excep-
tion . . . .

*Hyatt*, 551 F. Supp. 3d at 605–06.  Mr. Hyatt appeals.  We
have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the district court's grant of summary judg-
ment de novo.  *Star Fruits S.N.C. v. United States*, 393 F.3d
1277, 1281 (Fed. Cir. 2005).  Summary judgment is appro-
priate where "there is no genuine dispute as to any mate-
rial fact and the movant is entitled to judgment as a matter
of law."  Fed. R. Civ. P. 56(a).  The APA provides that
agency actions are unlawful if they are "arbitrary, capri-
cious, an abuse of discretion, or otherwise not in accordance
with law."  5 U.S.C. § 706(2)(A).

Mr. Hyatt contests the application of Rule 129(b)(1)(ii)
to his '938 patent application.  He argues that the appli-
cant-action exception to the general ban on restriction re-
quirements cannot apply to the '938 application for two
primary reasons: (I) he argues that the applicant-action ex-
ception cannot apply based on the text of Rule 129(b)(1)(ii);
and (II) he asserts that applying the applicant-action ex-
ception in this case contradicts Rule 129(a) and
Rule 129(b)(2).  Addressing each in turn, we find neither
persuasive.

## I

Rule 129(b)(1)(ii) permits restriction requirements for
transitional applications when "[t]he examiner has not
made a requirement for restriction in the present or parent
application prior to April 8, 1995, due to actions by the ap-
plicant."  Mr. Hyatt argues that this applicant-action ex-
ception to the general ban on restriction requirements
cannot apply to his '938 application based on its text.  Ap-
pellant's Br. 20.  He asserts that "actions," as used in the

applicant-action exception, does not encompass "inactions." As a result, he contends that his first arguable action within the meaning of Rule 129 was in August 2015 when he filed the claim amendments that prompted the restriction requirement. That filing, Mr. Hyatt argues, also does not permit a restriction requirement for his '938 application because an effect cannot precede its cause: a lack of a restriction requirement in 1995 cannot be said to be caused by his decades-later August 2015 filing.

Mr. Hyatt made similar arguments at the district court, but the district court found them unpersuasive. The court determined that Rule 129(b)(1)(ii) could and did apply to Mr. Hyatt's '938 application because Mr. Hyatt "failed to disclose claims to a separate invention and attempted to file them many years after 1995." *Hyatt*, 551 F. Supp. 3d at 605. And since "[w]ithholding these claims is an action by the applicant that falls within" the applicant-action exception, the Examiner was "within his authority to impose a restriction requirement under [that] exception." *Id.* at 605–06. We agree with the district court.

As a threshold matter, we first note that Mr. Hyatt's failure to disclose his species-altering amendments can also be accurately characterized as an act of withholding. *See id.* ("[Mr. Hyatt] failed to disclose claims to a separate invention . . . . Withholding these claims is an action by the applicant . . . ."). And whether Mr. Hyatt's actions are characterized as a failure to disclose or an act of withholding an entirely new species, it was that conduct of Mr. Hyatt that prevented the Examiner from entering a restriction requirement.

In any case, as the PTO observes, the Manual of Patent Examining Procedure ("MPEP") section 803.03 provides examples of inaction—including delays—that it categorizes as falling under the "actions by the applicant"

exception.[3] "Although the MPEP does not have the force of law, it is entitled to judicial notice so far as it is an official interpretation of statutes or regulations with which it is not in conflict." *Airbus S.A.S. v. Firepass Corp.*, 793 F.3d 1376, 1380 (Fed. Cir. 2015) (cleaned up).  And here, the MPEP demonstrates that "the public has been on clear notice of the [PTO]'s interpretation" of the applicant-action exception.  Appellees' Br. 21.  In light of the circumstances of this case, we fail to see how the application of Rule 129(b)(1)(ii) due to Mr. Hyatt's so-called inaction was

---

[3]   Section 803.03 lists the following examples as "actions by the applicant":

(A) applicant abandoned the application and continued to refile the application such that no [PTO] action could be issued in the application,

(B) applicant requested suspension of prosecution under 37 CFR [§] 1.103(a) such that no [PTO] action could be issued in the application,

(C) applicant disclosed a plurality of independent and distinct inventions in the present or parent application[] but delayed presenting claims to more than one of the disclosed independent and distinct inventions in the present or parent application such that no restriction requirement could be made prior to April 8, 1995, and

(D) applicant combined several applications, each of which claimed a different independent and distinct invention, into one large 'continuing' application, but delayed filing the continuing application first claiming more than one independent and distinct invention such that no restriction requirement could be made prior to April 8, 1995.

arbitrary, capricious, an abuse of discretion, or contrary to law.

This also does away with Mr. Hyatt's cause-and-effect argument because there is no cause after an effect here. As the PTO describes, and Mr. Hyatt does not rebut, Mr. Hyatt "did act prior to April 8, 1995 to actively withhold" his claim amendments.[4] *Id.* at 24. So Mr. Hyatt's action preceded (and resulted in) a lack of restriction requirement before April 8, 1995, making the applicant-action exception applicable.

In this regard, Mr. Hyatt makes two primary arguments that Rule 129's "actions" cannot include "inactions." Both are unpersuasive. First, he cites cases like *Defenders of Wildlife v. Andrus*, 627 F.2d 1238 (D.C. Cir. 1980), and *Western Watersheds Project v. Matejko*, 468 F.3d 1099 (9th Cir. 2006), in an attempt to distinguish action from inaction. Appellant's Br. 22. But, as the PTO observes, these cases are not only not binding, but they also address materially different statutory contexts. Appellees' Br. 25–26; *see Defs. of Wildlife*, 627 F.2d at 1243–44 (interpreting

---

[4]    We also agree with the district court that Mr. Hyatt's interpretation disjoins the rule's "April 8, 1995" date from its antecedent subject. The applicant-action exception allows a restriction requirement when "[t]he examiner has not made a requirement for restriction . . . prior to April 8, 1995, due to actions by the applicant." 37 C.F.R. § 1.129(b)(1)(ii). As the district court explained, "[t]he date refers to the *examiner's* [lack of] action"—i.e., the absence of a restriction requirement before April 8, 1995. *Hyatt*, 551 F. Supp. 3d at 606 (emphasis added); *see also* Appellees' Br. 24 ("The specified date clearly refers to the time of the restriction requirement by the Examiner . . . ."). And there is no dispute that the Examiner did not issue a restriction requirement for the '938 application before that date.

"agency action" as used in 42 U.S.C. § 4332(C)); *W. Watersheds*, 468 F.3d at 1106–08 (interpreting "agency action" as used in 16 U.S.C. § 1536(a)(2)).

Second, Mr. Hyatt seemingly contends that applying the applicant-action exception to the '938 application contradicts the SAA.[5] Although Mr. Hyatt fails to explicitly direct us to the SAA language he refers to, he appears to rely on the SAA's statement that the general ban on

---

[5] Mr. Hyatt maintained—both in his briefs and at oral argument—that the PTO never rebutted this argument. Mr. Hyatt characterizes this as a statutory dispute against which the PTO forfeited a response. Oral Arg. at 4:55–5:05, No. 21-2324, https://oralarguments.cafc.usco urts.gov/default.aspx?fl=21-2324_07072022.mp3. The PTO reasonably responded during oral argument that it did not understand Mr. Hyatt to raise a "facial challenge" to Rule 129 at the district court or on appeal. *Id.* at 13:35–58. The PTO added that, even if Mr. Hyatt preserved that argument, it fails on its merits because Rule 129 is consistent with the SAA. *Id.* at 13:58–14:40. Since we also struggled to ascertain the bounds of this SAA-based argument, we decline to find that the PTO forfeited a response. *See also* Appellant's Br. 23–24 (asserting that "[t]he URAA . . . forbade the PTO from entering 'a requirement for restriction,' subject to two exceptions not even arguably applicable here" (citing H.R. Doc. No. 103-316, at 1006, without further elaboration)). In any event, we are not required to accept Mr. Hyatt's legal arguments even if the PTO did not respond. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties[] but rather retains the independent power to identify and apply the proper construction of governing law.").

restriction requirements for transitional applications does not apply "if there has not been at least one [PTO] action due to actions by the applicant." H.R. Doc. No. 103-316, at 1006. His argument seems to depend on reading this SAA language as saying that the applicant-action exception applies only when the applicant's actions "prevent [the] PTO from taking *any* action in a given application." Appellant's Br. 22–23 (emphasis in original). And under this reading, in Mr. Hyatt's view, the applicant-action exception cannot apply here because the PTO issued several actions in examining Mr. Hyatt's '938 application prior to making the restriction requirement. *See* Oral Arg. at 24:04–30.

Mr. Hyatt's reading of that SAA language, though, restricts it beyond its plain terms. The SAA does not say that the general ban on restriction requirements for transitional applications does not apply only if there has been no PTO action due to actions by the applicant. The SAA simply says that the general ban does not apply if the applicant's actions prevent "at least one [PTO] action." H.R. Doc. No. 103-316, at 1006. And like the PTO, we see no inconsistency between the applicant-action exception and the SAA.[6] That the PTO "has not made a requirement for restriction," as described in the applicant-action exception, is an example of "one [PTO] action" that has not been taken, as stated in the SAA.

---

[6]    Following oral argument, Mr. Hyatt submitted a Rule 28(j) letter in an attempt to clarify this SAA-based argument. This letter was improper. Rule 28(j) is not a vehicle for seeking to substantively improve an answer to a question asked of a party at oral argument, and it is certainly not a vehicle for attempting to supplement briefing with four new paragraphs of argument and citations to five new cases that Mr. Hyatt could have identified previously. Fed. Cir. R. Prac. 28(j); *see* Oral Arg. at 5:11–9:40.

Indeed, rather than point to an inconsistency, the portion of the SAA that Mr. Hyatt seemingly relies on appears to mirror Rule 129. Rule 129(b)(1)(ii) states that the applicant-action exception applies when "[t]he examiner has not made a requirement for restriction . . . *due to actions by the applicant.*" 37 C.F.R. § 1.129(b)(1)(ii) (emphasis added). The SAA similarly instructs that that same general ban on restriction requirements "does not apply if . . . there has not been at least one [PTO] action *due to actions by the applicant.*" H.R. Doc. No. 103-316, at 1006 (emphasis added). And as previously discussed, the Examiner was unable to issue a restriction requirement for the '938 application within the relevant time frame "due to" Mr. Hyatt's "actions."

## II

Mr. Hyatt next argues that even if the applicant-action exception could apply based on its text, it still cannot apply to his '938 application as a matter of logic due to surrounding regulations. Mr. Hyatt contends that applying the applicant-action exception would conflict with Rule 129(a) and Rule 129(b)(2).

Rule 129(a) provides that

> [a]n applicant in an application . . . that has been pending for at least two years as of June 8, 1995, . . . is entitled to have a first submission entered and considered on the merits after final rejection . . . . A submission as used in this paragraph includes . . . an amendment to the . . . claims . . . .

37 C.F.R. § 1.129(a). According to Mr. Hyatt, Rule 129(a) entitles him to have his species-altering amendments considered on the merits as "continuation-type amendments," which would be subject to the pre-URAA patent term. Appellant's Br. 18–19, 32–34, 36–37. Mr. Hyatt contends that such continuation-type consideration would be inconsistent with a restriction requirement here because

imposing a restriction requirement effectively "swallow[s]" Rule 129(a). *Id.* at 33.

Rule 129(b)(2), for its part, states that an "applicant will be . . . notified and given a time period" to take certain actions if the applicant's transitional application "contains more than one independent and distinct invention and a requirement for restriction . . . cannot be made or maintained pursuant to this paragraph." 37 C.F.R. § 1.129(b)(2). Mr. Hyatt asserts that, since Rule 129(b)(2) recognizes that transitional applications may contain more than one independent and distinct invention, a restriction requirement for such an application—including the '938 application—would be improper. Appellant's Br. 34–36.

Mr. Hyatt levied similar arguments at the district court, and the court rejected them. The district court explained there was no inconsistency in applying the applicant-action exception in the face of either Rule 129(a) or Rule 129(b)(2). Specifically, the court said "[n]othing in [Rule 129(a)] references restriction practice or otherwise overrides the more specific provisions of [the applicant-action exception]." *Hyatt*, 551 F. Supp. 3d at 606. And as for Rule 129(b)(2), that section "applies only when a requirement for restriction . . . cannot be made . . . . In this case, however, the [applicant-action exception] applies" and permits a restriction requirement. *Id.* (cleaned up). We agree on both counts. Applying the applicant-action exception to Mr. Hyatt's '938 application is not inconsistent with either Rule 129(a) or Rule 129(b)(2).

Rule 129(a) does not speak to restriction requirements; it provides no limitations on applying the applicant-action exception. This means that applying the applicant-action exception to the '938 application does not "swallow" Rule 129(a), as Mr. Hyatt suggests. Appellant's Br. 33. As the PTO observes, the "submission of amendments under [Rule 129(a)] does not immunize those amendments from the normal course of examination, including restriction

under [the applicant-action exception] as appropriate." Appellees' Br. 32.

Rule 129(b)(2) is also not inconsistent with the application of the applicant-action exception in this case. Indeed, Rule 129(b)(2) specifically makes room for the applicant-action exception. By its text, Rule 129(b)(2) "applies only when 'a requirement for restriction . . . *cannot* be made or maintained pursuant to this paragraph.'" *Hyatt,* 551 F. Supp. 3d at 606 (emphasis added) (quoting 37 C.F.R. § 1.129(b)(2)). So, as the district court noted, applying the applicant-action exception to Mr. Hyatt's application "is not inconsistent" with Rule 129(b)(2) because that exception allows the PTO "an opportunity to issue a restriction requirement" here. *Id.* This means a requirement for restriction *can* be made, so Rule 129(b)(2) is of no import in this case.

\* \* \*

Because the district court correctly concluded that the applicant-action exception can and did apply in this case, we affirm its determination that the restriction requirement for Mr. Hyatt's '938 application was proper.

### CONCLUSION

We have considered Mr. Hyatt's remaining arguments but find them unpersuasive. For the foregoing reasons, we affirm the district court's judgment.

**AFFIRMED**