NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CHRIS DELEON,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2020-1199

---

Petition for review of the Merit Systems Protection Board in No. DC-0714-19-0431-I-1.

---

Decided:  September 20, 2021

---

DAVID BRANCH, Law Office of David A. Branch, Washington, DC, for petitioner.

GALINA I. FOMENKOVA, Commercial Litigation Branch, Civil Division, United States Department of Justice, for respondent.  Also represented by JEFFREY B. CLARK, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.

---

Before LOURIE, O'MALLEY, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge.*

Petitioner Chris deLeon appeals a decision of the Merit Systems Protection Board, which sustained a charge of conduct unbecoming a federal employee. The Board affirmed the United States Department of Veterans Affairs decision to remove him from employment with the federal service. For the reasons set forth in this opinion, we affirm the Board's determinations.

## I. BACKGROUND

On February 28, 2019, the Petitioner became embroiled in an altercation at the Washington, DC Veterans Affairs Medical Center (VAMC). J.A. 9. At the time of the incident, he was a police officer whose statutory arrest authority had been temporarily suspended due to failure to meet certain weapon-certification requirements. J.A. 10, 141. Based on the arrest-authority suspension and a prior injury, the Petitioner's supervisors had assigned him duties as a security assistant. J.A. 2, 188. Robyn Hardy, the Chief of Police of the DC VAMC also moved the Petitioner to the security desk due to complaints from VA personnel about unauthorized entries into employee offices, including the Human Resources (HR) Office. J.A. 19–20. His primary job as a security assistant was to check visitors' identifications at a VAMC entrance. J.A. 2.

While checking identifications at the facility that day, he encountered Ms. Karen Dadey, a veteran visiting the VAMC for medical appointments. J.A. 2–3. Dadey contends that, upon entering the VAMC, the Petitioner asked for her identification. J.A. 2. She noticed that the Petitioner was not wearing a police badge or uniform and asked him, in turn, whether he was an employee. J.A. 2–3. The Petitioner did not respond and asked for her identification again. *Id.* When Dadey did not immediately provide her identification, the Petitioner asked her to step aside to allow other visitors to pass. J.A. 11. After she entered the building, Dadey stopped at a police room and complained

about her encounter with the Petitioner. J.A. 3. She alleged that she felt as though she had been "detained." J.A. 3, 16. She also indicated that the Petitioner could be a mental-health patient and expressed concern about the way other patients could be affected if they were similarly treated. J.A. 3, 11.

Upon completing her medical appointments, Dadey left the building through the same VAMC entrance and waited for a shuttle bus. J.A. 3. She alleged that she noticed the Petitioner staring at her through the sliding doors and felt threatened. *Id.* Dadey reentered the facility and asked the Petitioner if he knew when the next shuttle would arrive. J.A. 3, 12. The Petitioner responded that he did not know. J.A. 12. Dadey also asked the Petitioner if anyone had spoken to him about their earlier interaction and reiterated that he should be wearing a badge and uniform. J.A. 3. Dadey alleged that the Petitioner then became angry, and she took out her phone in an attempt to take his photograph. *Id.* The Petitioner warned Dadey that taking photographs or recording video in the VAMC was a violation of agency policy. J.A. 7, 97. The Petitioner's assertion, however, was not true and contravened the Division Chief of the Department of Veterans Affairs (VA), who previously noted the lack of policies or regulations that prohibited the taking of photographs, digital images, and video or audio recordings on VA premises. *See* J.A. 206–08.

The Petitioner and Dadey dispute the fine details of the altercation that ultimately ensued. Dadey testified that she believed the Petitioner was likely a patient impersonating an officer. J.A. 15. She alleged that the Petitioner lunged at her, grabbed her right arm, shoved her into the wall, and demanded she delete any pictures she may have taken of him. J.A. 3–4. Dadey testified that, after the Petitioner "slammed" her into the wall, she informed him she had not taken any pictures of him. J.A. 16. She testified that she felt angry and violated by the Petitioner's alleged actions. J.A. 16. According to Dadey, the Petitioner ranted

that she did not "have the right to tell [him] what to wear, [or] what to put on his body when [he] leave[s] the house." *Id.* Dadey also testified that the Petitioner was "unstable and acting crazy." J.A. 17.

The Petitioner alleged that Dadey cornered him between his podium and the wall and positioned herself approximately one foot away from him. J.A. 10, 12. He testified that, when Dadey held up her phone so as to take a picture, he "feared for his safety," grasped her arm, and called for assistance with a "disruptive visitor." J.A. 7. The Petitioner testified that he grabbed her forearm believing "she could have used [the] phone as a weapon." J.A. 13. However, when an officer from the Metropolitan Police Department arrived at the scene and interviewed the Petitioner, he did not mention that he was afraid of Dadey during the altercation. J.A. 15. On the witness stand, the Petitioner provided further testimony that Dadey was "trying to get away from him" as he attempted to control the situation. J.A. 13. The Petitioner contends that his actions were consistent with the scope of his job duties and the purported policy against taking photographs at the VAMC. J.A. 7, 14.

On March 18, 2019, following an internal investigation, Hardy proposed the Petitioner's removal from federal service based on a single charge of conduct unbecoming of a VA employee. J.A. 1, 9. The VAMC Executive Director subsequently consulted with the VA's HR Office and the Office of General Counsel. J.A. 22. On April 8, 2019, the Director sustained the charge and issued a decision to remove the Petitioner effective April 10, 2019. J.A. 8–9. Considering the evidence, the Director explained that the Petitioner knew his arrest authority had been suspended prior to the incident, but he nevertheless engaged in "physical contact with a patient" when he lacked the authority to do so. J.A. 8. The Director discussed several factors outlined in *Douglas v. Veterans Administration*, 5 M.S.P.B. 313 (1981), including loss of confidence in the Petitioner's

ability to perform his job and consideration of lesser penalties.  J.A. 8.

The Petitioner filed a timely appeal with the Merit Systems Protection Board (Board) on April 9, 2019.  *Id.*  The Administrative Judge (AJ) held a hearing, listened to testimony, and reviewed the surveillance video of the incident.  *See* J.A. 10.  After reviewing the evidence, the AJ issued an Initial Decision finding that the VA "prove[d] by substantial evidence that the [Petitioner] engaged in the charged misconduct."  J.A. 29.  The AJ noted that the surveillance-video evidence contradicted the Petitioner's testimony that Dadey stood close to him with her phone next to his face or had provoked him into action.  J.A. 30.  The AJ also determined that Dadey had not cornered him and "he could have moved away from [her] without incident."  *Id.*  The AJ found "it was inherently improbable that the [Petitioner] feared for his safety."  *Id.*  Rather,  it was "more likely that the [Petitioner] feared [Dadey] would report him as she told him she had done earlier in the day."  J.A. 30–31.

With respect to the Petitioner's claim that he believed Dadey would use her phone as a weapon, the AJ found the Petitioner's testimony "inherently improbable" and "inconsistent with his prior statements."  J.A. 31.  Regardless of whether the Petitioner believed Dadey posed a threat to him, the AJ found such belief to be "insufficient to justify [the] aggressive response."  *Id.*  Accordingly, the AJ determined that the Petitioner's actions were "improper and constituted conduct unbecoming a VA employee."  *Id.*

Next, the AJ discussed the penalty imposed.  The AJ noted that the Board lacks authority to mitigate the penalty following a finding that the charged misconduct is supported by substantial evidence.  J.A. 36 (citing 38 U.S.C. § 714(d)(2)(B)).  Thus, pursuant to the § 714 statutory mandate, the AJ determined that an evaluation of any *Douglas* factors was unnecessary, including consideration of the Petitioner's argument that the VA treated him differently

than another officer involved in a similar physical alterca-
tion, whom the Petitioner claimed is a comparator.  J.A. 36.

Despite deciding that there was no need to apply any
*Douglas* factors, the AJ evaluated the comparator claim.  In
so doing, the AJ determined that the Petitioner could not
prevail because the alleged comparator officer had "re-
tained his law enforcement authority while the [Peti-
tioner]'s was suspended."  *Id.*  Furthermore, unlike the
Petitioner, the alleged comparator had "attempted to
deescalate the situation and only made physical contact
with the patient after the patient struck the officer."  *Id.*
In contrast, the AJ found that the Petitioner had initiated
physical contact with Dadey and noted the lack of evidence
to support efforts to deescalate the confrontation.  J.A. 37.
Moreover, unlike in this case, the patient in the comparator
case had not formally "pursued a complaint" as Dadey did.
J.A. 35, 37.  Accordingly, the AJ determined that weighing
the comparator claim would not alter the outcome because
the alleged comparator and the Petitioner were not simi-
larly situated.  *Id.*

Ultimately, the AJ found that the VA's decision to re-
move the Petitioner from his post was supported by sub-
stantial evidence and, on that basis, sustained the charge
of misconduct unbecoming a VA employee.  *Id.*  The Peti-
tioner did not appeal the AJ's findings to the full Board
and, thus, the AJ's determination became the Board's deci-
sion.  The Petitioner now appeals.  We have jurisdiction
under 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9).

II.  STANDARD OF REVIEW

We review Board decisions under the statutory con-
straints set forth in 5 U.S.C. § 7703(c).  *Beck v. Dep't of the
Navy*, 997 F.3d 1171, 1181–82 (Fed. Cir. 2021).  We must
affirm unless the Board's decision is "(1) arbitrary, capri-
cious, an abuse of discretion, or otherwise not in accordance
with law; (2) obtained without adherence to procedures re-
quired by law, rule, or regulation; or (3) unsupported by

substantial evidence." 5 U.S.C. § 7703(c).   An agency abuses its discretion when it renders a decision "based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (citation omitted).   "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 964 (Fed. Cir. 2007) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## III. DISCUSSION

The Petitioner raises a single issue in his opening brief, namely, that the AJ erred in determining the alleged comparator officer and the Petitioner were not similarly situated.   Pet'r's Br. 8–9.[1]   The VA, in response, makes two primary arguments: (1) § 714(d)(2)(B) unambiguously precludes the AJ from mitigating the penalty imposed for the Petitioner's misconduct, thereby rendering analysis of any *Douglas* factors superfluous; and (2) the AJ's conclusion that the Petitioner and the alleged comparator are not similarly situated is supported by substantial evidence. Resp't's Br. 8–11.

We first underscore this court's recent decision in *Connor v. Department of Veterans Affairs*, _ F.4th _, 2021 WL

---

[1]    To the extent the Petitioner argues, in his reply brief, that the AJ erred in concluding the Board lacks authority to mitigate the VA's penalty under § 714(d)(2)(B), *see* Pet'r's Reply Br. 3–4, we conclude that the Petitioner has forfeited such argument. *See United States v. Olano*, 507 U.S. 725, 731 (1993) (noting that a party may forfeit an argument by failing to timely assert it).

3556910 (Fed. Cir. 2021), which addresses and forecloses the VA's § 714(d)(2)(B) arguments.

Section 714 prescribes that "if the decision of the [VA] Secretary is supported by substantial evidence, the administrative judge shall not mitigate the penalty prescribed by the Secretary." 38 U.S.C.A. § 714(d)(2)(B). In interpreting this statutory provision, *Connor* held that "§ 714 precludes the Board only from *mitigating* the agency's chosen penalty. It does not alter the penalty review with respect to the *Douglas* factors." *Connor*, 2021 WL 3556910, at *5 (internal citation omitted). The court emphasized that the enactment of § 714 did not change the proper legal standard and, thus, "the VA and Board must continue to apply the relevant *Douglas* factors in considering the reasonableness of the penalty in VA disciplinary[-]action cases." *Id.* Thus, the Board's determination that it lacks authority to review the VA's penalty and consider the *Douglas* factors under § 714(d)(2)(B) is incorrect in view of *Connor*.

This court's recent decision in *Rodríguez v. Department of Veterans Affairs*, _ F.4th _, 2021 WL 3556562 (Fed. Cir. 2021) is also instructive. *Rodríguez* held that an AJ's conclusion that substantial evidence is both the level of proof required of the agency and the Board's standard of review constitutes legal error. *Rodríguez*, 2021 WL 3556562, at *8. We conclude that the AJ in this case also legally erred by applying substantial evidence as the agency's burden of proof.[2] *See* J.A. 29.

Notwithstanding the Board's erroneous determinations as to the scope of § 714 and the burden of proof applicable, we conclude that the AJ's comparator findings in the alternative are adequately supported by substantial evidence because the alleged comparator is not similarly

---

[2]    The error, however, is not dispositive given the AJ's comparator findings, as explained below.

situated to the Petitioner. *See* J.A. 37. The alleged comparator retained his law-enforcement authority, attempted to deescalate the conflict, and did not initiate physical contact during the altercation. *See* J.A. 36–37. The Petitioner, on the other hand, lacked law-enforcement authority to detain or subdue anyone, did not exercise prudent restraint to control the situation, and initiated a physical altercation with a veteran that was neither appropriate nor justified under the circumstances. We therefore conclude that the AJ correctly identified fundamental distinctions in the alleged comparator's case that materially distinguish it from the facts of this record. And we discern no reason to disturb the Board's assessment regarding the credibility of the Petitioner's inconsistent testimony or reweigh the *Douglas*-factor evaluation of the Board's comparator findings.[3] The Board's decisions to sustain the charge of misconduct and affirm the Petitioner's removal from employment with the federal service are supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth in this opinion, we affirm the Board's decision upholding the Petitioner's removal from federal service under 38 U.S.C. § 714(d)(2)(B). We do not reach the forfeited arguments in the Petitioner's reply brief.

## AFFIRMED

No costs.

---

[3]    We note that the Petitioner's opening brief only alleged that the Board erred in its comparator findings and, thus, we limit our analysis to that argument.